**FAMILYSTYLE OF ST. PAUL, INC., A Minnesota Corporation, Appellant,**

v.

**CITY OF ST. PAUL, MINNESOTA, a municipal corporation; St. Paul City Council; Individual City Council Members: James Scheibel, Robert Long, Kiki Sonnen, Janice Rettman, Roger Goswitz, Tom Dimond; State of Minnesota Office of the Attorney General; and Hubert H. Humphrey, III, Attorney General, Appellees.**

No. 90–5059.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1990.

Decided Jan. 8, 1991.

Rehearing and Rehearing En Banc Denied Feb. 15, 1991.

Earl P. Gray, St. Paul, Minn., for appellant.

Gail M. Olson, St. Paul, Minn., for appellees.

Before WOLLMAN and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Familystyle of St. Paul, Inc. appeals from the district court's [1] denial of its motion for summary judgment and grant of summary judgment for the City of St. Paul and the State of Minnesota. We affirm.

## I.

Familystyle provides rehabilitative services to mentally ill persons and operates residential group homes for them in St. Paul, Minnesota. Familystyle sought special use permits for the addition of three houses to its existing campus of group homes, intending to expand its capacity from 119 to 130 mentally ill persons. Twenty-one of Familystyle's houses, including the three proposed additions, are clustered in a one and one-half block area. On the condition that Familystyle would work to disperse its facilities, the St. Paul City Council issued temporary permits for the three additional houses. Familystyle failed to meet the conditions of the special use permits, and the permits expired. After St. Paul denied renewal of the permits, Familystyle exchanged its license for one excluding the three additional houses.

Relying upon the provisions of the Fair Housing Amendment Act of 1988, Familystyle challenges the city ordinance and state laws that bar the addition of these three houses to its campus.

---

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

## II.

■ Minnesota requires facilities that provide residential services for people with mental illness and retardation to be licensed. Minnesota seeks through the licensing of group homes to place the mentally ill in the least restrictive environment possible and to allow them "the benefits of normal residential surroundings." Minn. Stat. § 245A.11, subd. 1. "Care, treatment, and deinstitutionalization of mentally ill adults [is] a matter of special state concern" in Minnesota. *Northwest Residence, Inc. v. City of Brooklyn Center*, 352 N.W.2d 764, 772 (Minn.Ct.App.1984).

An integral part of the licensing process guarantees that residential programs are geographically situated, to the extent possible, in locations where residential services are needed, where they would be a part of the community at large, and where access to other necessary services is available. Minn.Stat. § 245A.11, subd. 4. This licensing requirement reflects the goal of deinstitutionalization—a philosophy of creating a full range of community-based services and reducing the population of state institutions. *See* "Deinstitutionalization of Mentally Retarded People," Office of the Legislative Auditor, State of Minnesota, February 1986, at p. 3.

Minnesota's deinstitutionalization policy is formally acknowledged by its Comprehensive Adult Mental Health Act Housing Mission Statement, which requires that "the housing services provided as part of a comprehensive mental health service system ... allow all persons with mental illness to live in stable, affordable housing, in settings that maximize community integration and opportunities for acceptance." Minn.Stat. § 245.461, subd. 4. Federal law affirms the deinstitutionalization philosophy in the Developmental Disabilities Assistance Act, in which Congress found that

it is in the national interest to offer persons with developmental disabilities the opportunity, to the maximum extent feasible, to make decisions for themselves and to live in typical homes and communities where they can exercise their full rights and responsibilities as citizens.

42 U.S.C. § 6000(a)(8).

Deinstitutionalization of the mentally ill is advanced in Minnesota by requiring a new group home to be located at least a quarter mile from an existing residential program unless the local zoning authority grants a conditional use or special use permit. Minn.Stat. § 245A.11, subd. 4. The St. Paul zoning code similarly requires community residential facilities for the mentally impaired to be located at least a quarter of a mile apart.

The Fair Housing Act Amendment of 1988 to Title VIII of the Civil Rights Bill of 1968 makes it unlawful

(f)(1) [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter;

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

    \*    \*    \*    \*    \*    \*

(3) For the purposes of this subsection, discrimination includes—

    \*    \*    \*    \*    \*    \*

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(1) & (3). Section 3615 of the Fair Housing Act invalidates "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter." 42 U.S.C. § 3615.

Familystyle argues that the Minnesota and St. Paul dispersal requirements are invalid because they limit housing choices of the mentally handicapped and therefore conflict with the language and purpose of the 1988 Amendments to the Fair Housing Act. We disagree. We perceive the goals

of non-discrimination and deinstitutionalization to be compatible. Congress did not intend to abrogate a state's power to determine how facilities for the mentally ill must meet licensing standards. Minnesota's dispersal requirements address the need of providing residential services in mainstream community settings. The quarter-mile spacing requirement guarantees that residential treatment facilities will, in fact, be "in the community," rather than in neighborhoods completely made up of group homes that re-create an institutional environment—a setting for which Familystyle argues. We cannot agree that Congress intended the Fair Housing Amendment Act of 1988 to contribute to the segregation of the mentally ill from the mainstream of our society. The challenged state laws and city ordinance do not affect or prohibit a retarded or mentally ill person from purchasing, renting, or occupying a private residence or dwelling.

The state plays a legitimate and necessary role in licensing services for the mentally impaired. We agree with the district court that the dispersal requirement as part of the licensure process is a legitimate means to achieve the state's goals in the process of deinstitutionalization of the mentally ill. Accordingly, we conclude that the Minnesota Human Services Licensing Act and the St. Paul zoning code do not violate the Fair Housing Amendments Act of 1988.

### III.

Familystyle argues that the state and city dispersal requirements result in a disparate impact on and discriminatory treatment of the mentally ill.

In *United States v. City of Black Jack*, 508 F.2d 1179 (8th Cir.1974), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975), we explained that in a Title VIII case brought against a public defendant, the plaintiff has the initial burden of presenting a prima facie case of the discriminatory effect of the challenged law. *Id.* at 1185. If the law is shown to have such an effect, the burden shifts to the governmental defendant to demonstrate that its conduct was necessary to promote a governmental interest commensurate with the level of scrutiny afforded the class of people affected by the law under the equal protection clause. *Id.* at 1185 n. 4.

The district court measured the government's interest in the second part of its analysis using the considerations defined in *Black Jack*, a racial discriminatory impact case. We conclude, however, that the appropriate level of scrutiny is that announced in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985), in which the Court held that persons suffering from mental retardation do not constitute a suspect class. The second question in the disparate impact analysis under Title VIII then becomes whether legislation which distinguishes between the mentally impaired and others is "rationally related to a legitimate governmental purpose." *Id.*

The district court found that although local and state dispersal requirements for group homes on their face limit housing choices for the mentally ill, the government's interest in deinstitutionalization sufficiently rebutted any discriminatory effect of the laws. 728 F.Supp. 1396. Familystyle argues that the district court misapplied the factors relevant in evaluating the government's interest in dispersal requirements. We disagree.

The district court examined the reasons for the state and local law under the strict scrutiny standard. Although we believe that it is not necessary to evaluate the purposes so closely, we agree with the district court that the government's interests are valid. The state aims to integrate the mentally ill into the mainstream of society. One method to achieve that goal is to license group homes which advance the process of deinstitutionalization. Familystyle is a treatment facility that houses more than one hundred mentally ill patients. Further growth of the Familystyle treatment facility may well be counterproductive to the desegregation of the mentally ill.

Had the state or city intended to discriminate against the mentally ill, one sure way would be to situate all group homes in the

same neighborhood—a situation for which Familystyle argues. The state's group home dispersal requirements are designed to ensure that mentally handicapped persons needing residential treatment will not be forced into enclaves of treatment facilities that would replicate and thus perpetuate the isolation resulting from institutionalization.

We are not persuaded that any intent to discriminate against the handicapped lies beneath the surface of the state and local dispersal requirements and the purposes of deinstitutionalization. We have been given no reason to believe that Familystyle is incapable of dispersing its group homes and integrating its clients into the community. Accordingly, we conclude that the goal of deinstitutionalization remains a valid and legitimate end that the State of Minnesota and the City of St. Paul are pursuing through legally acceptable means.

The district court's judgment is affirmed.