The ARC OF NEW JERSEY, INC., a New Jersey non-profit corporation; Mental Health Association in New Jersey, Inc., a New Jersey non-profit corporation; Camden County Unit of the New Jersey Association for Retarded Citizens, Inc., a New Jersey non-profit corporation; J.F., G.F., and R.W., three incompetent adults, by their guardian, the Bureau of Guardianship Services of the New Jersey Division of Developmental Disabilities (David Hearn, Guardianship Worker); and the Mental Health Association in Southwestern New Jersey, Inc., a New Jersey non-profit corporation, Plaintiffs,

v.

The STATE OF NEW JERSEY, Defendant.

Civil Action No. 93–1399.

United States District Court, D. New Jersey.

Dec. 31, 1996.

Community Health Law Project by Susan DiMaria, East Orange, New Jersey, for Plaintiffs.

Peter Verniero, Attorney General of New Jersey by Judith A. Nason, Esq., Deputy Attorney General, Trenton, New Jersey, for Defendant, the State of New Jersey.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BROTMAN, District Judge:

Over two years ago another Judge of this Court, the Honorable Harold A. Ackerman, U.S.D.J., determined that certain provisions of a New Jersey zoning enabling statute violated the nation's Fair Housing Amendments Act of 1988 (the "FHAA"). The FHAA prohibits discrimination in housing against persons with handicaps. Judge Ackerman declared the State's enabling provisions invalid to the extent they permitted municipalities to enact zoning ordinances which violated the FHAA in their discrimination against developmentally disabled individuals. Since Judge Ackerman's determination, however, the New Jersey Legislature has not as yet amended the enabling provisions to conform to the FHAA.

The issue of these provisions' validity is again before the Court, in this action filed after a township in southern New Jersey enacted an ordinance regulating community residences. The township has since repealed the ordinance. The plaintiffs, however, have pressed their case against the State with regard to the two enabling provisions invalidated by Judge Ackerman, as well as another provision which he declared discriminatory on its face. Notwithstanding Judge Ackerman's decision, the Attorney General of New Jersey has filed a summary judgment motion in this action contending the provisions in question do not violate the FHAA, other Federal statutory laws, or constitutional provisions. Plaintiffs have filed a cross-motion arguing to the contrary. For the reasons stated below, the Court grants partial summary judgment to plaintiffs on the grounds that the enabling provisions violate the FHAA. The Court declares these provisions null and void insofar as they relate to community residences for the developmentally disabled, and orders the Attorney General of New Jersey to transmit a copy of the Court's ruling to the State Legislature and the State's municipalities.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

### A. THE VOORHEES DISPUTE

This action arises out of a dispute over the siting of a community residence for seven developmentally disabled men [1] in Voorhees Township, New Jersey. In December 1990, the Organization for the Advancement of Retarded Citizens ("OARC") received a zoning permit to locate such a residence on Chandler Lane in Voorhees. Soon thereafter, neighbors filed an appeal with the Voorhees Township Zoning Board in an attempt to force the township to revoke the permit. These residents were successful: On April 4, 1991, OARC's zoning permit was revoked. Undaunted, OARC challenged the revocation of their permit by filing an action in lieu of prerogative writ with the Superior Court of New Jersey, Law Division, Camden County. Subsequently, that court ruled in favor of

---

**1.** The New Jersey Municipal Land Use Law ("MLUL"), N.J.Stat.Ann. §§ 40:55D–1 to –136 (West 1991 and Supp.1996), defines "community residence for the developmentally disabled" as any licensed community residential facility:

> providing food, shelter, and personal guidance, under such supervision as required, to not more than 15 developmentally disabled or mentally ill persons, who require assistance, temporarily or permanently, in order to live in the community, and shall include but not be limited to: group homes, half-way houses, intermediate care facilities, supervised apartment living arrangements, and hostels.

N.J.Stat.Ann. § 40:55D–66.2 (West Supp.1996). "Developmental disability" as used in the MLUL means:

> a severe, chronic disability of a person which: a. is attributable to a mental or physical impairment or combination of mental or physical impairments; b. is manifest before age 22; c. is likely to continue indefinitely; d. results in substantial functional limitations in three or more of the following areas of major life activity, that is, self-care, receptive and expressive language, learning, mobility, self-direction and capacity for independent living or economic self-sufficiency; and e. reflects the need for a combination and sequence of special interdisciplinary or generic care, treatment or other services which are of lifelong or extended duration and are individually planned and coordinated. Developmental disability includes, but is not limited to, severe disabilities attributable to mental retardation, autism, cerebral palsy, epilepsy, spina bifida and other neurological impairments where the above criteria are met.

*Id.;* N.J.Stat.Ann. § 30:11B–2 (West Supp.1996). The Court is following these definitions.

OARC by restoring its zoning permit allowing the Chandler Lane property to be used as a community residence.

A number of Voorhees residents also urged the Township Committee of the Township of Voorhees to adopt a zoning ordinance treating community residences for the developmentally disabled as "conditional uses." [2] As with the zoning permit battle, these residents were initially successful: On April 22, 1991, the Committee adopted a zoning ordinance requiring community residences for the developmentally disabled and shelters for victims of domestic violence housing seven or more persons, excluding resident staff, to meet a number of specifications in order to receive a conditional use permit.

## B. THE STATE ENABLING PROVISION

The Voorhees ordinance expressly drew its authority from a section of the New Jersey Municipal Land Use Law (hereinafter the "MLUL") addressing restrictions on community residences for the developmentally disabled and community shelters for victims of domestic violence; this section, N.J.Stat.Ann. § 40:55D–66.1 [3] (West Supp.1996) (hereinafter "Section 66.1"), was amended in 1993 to include community residences for persons with head injuries.[4] Section 66.1 first pro-

---

**2.** The New Jersey MLUL, which governs conditional use procedures in the state's municipalities, defines a conditional use as:

> a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the [municipality's] zoning ordinance, and upon the issuance of an authorization therefor by the [municipal] planning board.

N.J.Stat.Ann. § 40:55D–3 (West Supp.1996).

A provision of the MLUL, N.J.Stat.Ann. § 40:55D–67 (West Supp.1996), states as a general matter that a municipality may enact a zoning ordinance designating certain uses as conditional uses. Such an ordinance must set forth definite standards of sufficient clarity to guide the planning board and a prospective applicant for a conditional use permit. *Cardinal Properties v. Borough of Westwood,* 227 N.J.Super. 284, 547 A.2d 316, 317 (App.Div.1988) (citing § 40:55D–67).

Property uses are properly classified as conditional uses when they have distinct characteristics which render them "unsuitable, in the planning sense, for indiscriminate location within a district." *Exxon Co., U.S.A. v. Township of Livingston ("Livingston"),* 199 N.J.Super. 470, 489 A.2d 1218, 1222 (App.Div.1985); *see also Coventry Square, Inc. v. Westwood Zoning Board of Adjustment,* 138 N.J. 285, 650 A.2d 340 (1994) (similar explanation by New Jersey Supreme Court). Gasoline stations, for example, warrant conditional use treatment designed to locate them at "suitable sites with appropriate arterial access and internal design." *Livingston,* 489 A.2d at 1222.

**3.** The full text of this section in its current form provides:

> Community residences for the developmentally disabled, community shelters for victims of domestic violence and community residences for persons with head injuries shall be a permitted use in all residential districts of a municipality, and the requirements therefor shall be the same as for single family dwelling units located within such districts; provided, however, that, in the case of a community residence for the developmentally disabled, community shelter for victims of domestic violence or community residence for persons with head injuries housing more than six persons, excluding resident staff, a zoning ordinance may require for the use or conversion to use of a dwelling unit to such a community residence or shelter, a conditional use permit in accordance with section 54 of the act to which this act is a supplement [§ 40:55D–67]. Any requirements imposed for the issuance of a conditional use permit shall be reasonably related to the health, safety and welfare of the residents of the district; provided, however, that a municipality may deny such a permit to any proposed community residence for the developmentally disabled, community shelter for victims of domestic violence or community residence for persons with head injuries which would be located within 1500 feet of an existing such residence or shelter; provided, further, however, that a municipality may deny the issuance of any additional such permits if the number of persons, other than resident staff, resident at existing such community residences or community shelters within the municipality exceeds 50 persons, or 0.5% of the population of the municipality, whichever is greater.

N.J.Stat.Ann. § 40:55D–66.1 (West Supp.1996).

**4.** The MLUL defines a "person with head injury" as a person:

> who has sustained an injury, illness or traumatic changes to the skull, the brain contents or its coverings which results in a temporary or permanent physiobiological decrease of mental, cognitive, behavioral, social or physical functioning which causes partial or total disability.

N.J.Stat.Ann. § 40:55D–66.2 (West Supp.1996).

vides that such community residences or shelters which house six or fewer persons (excluding staff) shall be treated as permitted uses in all residential districts of a municipality. The next provision of Section 66.1, however, purports to authorize municipalities to treat as a conditional use any such community residence or shelter housing seven or more persons (hereinafter the "conditional use provision"). Further, localities are permitted to deny a conditional use permit to any proposed such residence or shelter housing over seven persons which would be located within 1500 feet of another community residence or shelter (the "spacing provision"). Similarly, a municipality may deny a permit whenever the number of persons (other than staff) living in existing community residences or shelters in the locality exceeds fifty persons, or 0.5% of the municipal population, whichever is greater (the "ceiling quota provision").[5]

## C. THE PRESENT FEDERAL COURT LAWSUIT

In March 1993, approximately two years after enactment of the Voorhees ordinance, OARC and other plaintiffs[6] instituted an action in this Court against Voorhees and its Committee (collectively, the "Voorhees Defendants"). The plaintiffs alleged that the ordinance discriminated against developmentally disabled and mentally ill persons in violation of several federal and state statutory and constitutional provisions. Further, the plaintiffs sought injunctive and declaratory relief as well as compensation for economic damages.

In October 1993, the plaintiffs amended their Complaint to name the State of New Jersey as a defendant and to challenge the conditional use, spacing, and ceiling quota provisions of Section 66.1 of the MLUL. Plaintiffs claimed that these provisions violated: (1) the Fair Housing Act ("Title VIII"), as amended by the FHAA; (2) the Americans with Disabilities Act; (3) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1994); and (4) the Due Process and Equal Protection Clauses of the United States and New Jersey Constitutions.

In February 1995, while this litigation was pending, Voorhees repealed the challenged ordinance in its entirety. Both the Voorhees Defendants and New Jersey then filed motions to dismiss the plaintiffs' Amended Complaint on grounds of mootness and lack of standing. The Court denied those motions in March 1996.

Subsequently the Voorhees Defendants were dismissed from the suit by stipulation, and plaintiffs and the State submitted the present cross-motions for summary judgment directed at the validity of the enabling provisions.

## II. DISCUSSION

### A. STANDARD GOVERNING SUMMARY JUDGMENT

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the nonmoving party. *Serbin* at 69 n. 2. The threshold inquiry is whether there are "any

---

5. If, for example, a municipality has a population of 15,000, this provision allows it to deny a conditional use permit to a proposed community residence for seven developmentally disabled men if the total number of persons resident at existing community residences and shelters in the municipality exceeds 75. *New Jersey Senate County and Municipal Government Committee Statement to Senate, No. 210* (1978) (State's App. in Support of Mot., at 2–4); *New Jersey Senate County and Municipal Government Committee Statement to Senate, No. 3244—L.1979, c. 338* (1979).

6. The other plaintiffs are: (1) the Association of Retarded Citizens of New Jersey and its Camden County unit, with which OARC is affiliated; (2) the Mental Health Association of New Jersey, as well as its southwestern New Jersey affiliate; and (3) three individuals, J.F., G.F. and R.W., who were said to be living at OARC's Chandler Lane residence at the time the action was instituted. Comp. ¶¶ 1–7, 10–41.

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. Nat'l Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson* at 248, 106 S.Ct. at 2510). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin* at 69 n. 2 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson* at 249–50, 106 S.Ct. at 2510–11.

## B. REVIEW OF THE VALIDITY OF THE CHALLENGED STATE ENABLING PROVISIONS

### 1. *The Fair Housing Amendments Act*

Congress initially enacted the Fair Housing Act as Title VIII of the Civil Rights Act of 1968 to bar housing discrimination based on race, color, religion or national origin. Six years later, Title VIII was amended to prohibit discrimination based on gender. *City of Edmonds v. Oxford House,* 514 U.S. 725, ——, n. 1, 115 S.Ct. 1776, 1779, n. 1, 131 L.Ed.2d 801 (1995). In 1988, Congress passed the Fair Housing Amendments Act of 1988, Pub.L. No. 100–430, 1988 U.S.C.C.A.N. (102 Stat. 1619), which extended coverage to individuals with handicaps.[7]

■ As the Third Circuit has emphasized, the enactment of the FHAA was a "clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Helen L. v. DiDario,* 46 F.3d 325, 333 n. 14 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995) (quoting H.R.Rep. No. 711, 100th Cong., 2d Sess. 18 (1988) ("*House Report*"), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2179); *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1105 (3d Cir.1996). The 1988 Act is to be accorded a "generous construction" consistent with the "broad and inclusive compass" of Title VIII. *City of Edmonds* at ——, —— n. 11, 115 S.Ct. at 1780, 1783 n. 11 (citing *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209, 212, 93 S.Ct. 364, 368, 34 L.Ed.2d 415 (1972)); *Hovsons* at 1106.

The FHAA provides that it is unlawful to make a dwelling unavailable to any prospective buyer or renter because of a handicap of that individual, of someone associated with that individual, or of a resident or potential resident. Similarly, the statute prohibits discrimination against these persons in the terms, conditions, privileges of housing sale or rental, or in the provision of services or facilities.[8]

A House of Representatives committee report makes clear that the latter of these two

---

7. The FHAA also expanded the coverage of Title VIII to prohibit "familial status" discrimination, i.e. discrimination against parents and other custodians living with children under the age of eighteen. 42 U.S.C. § 3602(k) (1994).

8. Specifically, 42 U.S.C. § 3604(f) (1994) provides in pertinent part that it shall be unlawful:

(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
(A) that buyer or renter,
(B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or

FHAA provisions was "intended to prohibit ... [the discriminatory imposition of] terms or conditions ... which have the effect of excluding ... congregate living arrangements for persons with handicaps." *Hovsons* at 1106 (quoting *House Report* at 23). It was aimed in part at state and local land use laws which discriminate against the disabled, such as those applying "special requirements through ... conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community." *House Report* at 24.

 A plaintiff makes out a prima facie case under Title VIII, as amended by the FHAA, by showing either: (1) intentional disparate treatment of the handicapped with regard to housing; or (2) disparate impact alone, without proof of discriminatory intent. *Doe v. City of Butler*, 892 F.2d 315, 323 (3d Cir.1989). A case of disparate treatment may be established against a public entity by demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others. *Larkin v. State of Mich. Dept. of Social Services*, 89 F.3d 285, 289 (6th Cir.1996); *see also Association for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth*, 876 F.Supp. 614 (D.N.J.1994) (*"Elizabeth"*) at 620. A plaintiff in this instance need not prove malice or prejudice on the part of the drafters of the statute or ordinance, because the proper focus is on the explicit terms of the legislation. Federal courts have extended to Title VIII the Supreme Court's instruction in the Title VII employment context that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect." *E.g., Larkin* at 290; *Elizabeth* at 620.

 If a Title VIII plaintiff establishes that a statute or ordinance is facially discriminatory, the burden shifts to the governmental defendant to justify the disparate treatment. *Elizabeth* at 620 (citing, e.g., *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 149 (3d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 1458, 55 L.Ed.2d 499 (1978)). In this Circuit, a district court is accorded discretion in determining whether the defendant has met its burden, but is to be guided by the following rough criteria:

> [A] justification must serve, in theory and practice, a legitimate, bona fide interest of the Title VIII defendant, and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact.

*Rizzo* at 149. If the defendant introduces evidence that no alternative course of action could be adopted, the burden then shifts back to the plaintiff to demonstrate that other practices are available. "If the Title VIII prima facie case is not rebutted, a violation is proved." *Id.*

### 2. This Court's Prior Decision in Elizabeth

As indicated *supra*, the Honorable Harold A. Ackerman of this Court has already ruled on the validity of two of the three enabling provisions at issue in this case. In *Association for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth*, 876 F.Supp. 614 (D.N.J.1994), Judge Ackerman considered a challenge to an ordinance imposing spacing and ceiling quota restrictions on community residences for the developmentally disabled. The group of plaintiffs also challenged the underlying state enabling clauses. The defendants were the northern

(C) any person associated with that buyer or renter.
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
(A) that person; or
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.
The FHAA defines "handicap" as meaning:
(1) a physical or mental impairment which substantially limits one or more major life activities,
(2) a record of having such an impairment, or
(3) being regarded as having such an impairment.
42 U.S.C. § 3602(h) (1994).

New Jersey city of Elizabeth, the City Council of Elizabeth, and the city's director of construction. The State was not a defendant.

With regard to the three enabling provisions challenged in the present action, the Court first determined that they are facially discriminatory against the developmentally disabled in violation of the FHAA.[9] The issue next considered was whether the state spacing and ceiling quota provisions were justified under the Third Circuit's Title VIII test. Judge Ackerman weighed a New Jersey Senate committee report stating that these provisions "would provide a safeguard against changing the residential character of a given municipality, through the placement in the municipality of too many such residences." The Court ultimately determined that this "residential character" objective was not an adequate justification. The spacing and ceiling quota clauses were therefore invalid, the Court ruled, to the extent that they permitted municipalities to adopt ordinances which violate the FHAA. The Court did not directly rule on the validity of the general conditional use provision. *Elizabeth* at 624–25.

### 3. *The Present Challenge to the State Enabling Provisions*

■ Plaintiffs in this case challenge not only the State's spacing and ceiling quota provisions for community residences but also the conditional use provision. Moreover, they claim in their Amended Complaint that Section 66.1 discriminates not only against the developmentally disabled as a group but also against the mentally ill. As an initial matter, I concur with Judge Ackerman's conclusion that each of the three provisions are, on their face, discriminatory against persons with developmental disabilities in violation of the FHAA.[10] By their terms they permit municipalities to impose restrictions on the housing of developmentally disabled individuals[11] that are not imposed on the housing of others. *Elizabeth* at 624.

Additionally, Section 66.1 violates the FHAA on its face by discriminating against those who may be served by a community residence for the mentally ill. The MLUL defines a "community residence for the developmentally disabled" as meaning a facility for either developmentally disabled or mentally ill persons who require assistance in order to live "in the community." N.J.Stat. Ann. § 40:55D–66.2 (West Supp.1996). The FHAA, meanwhile, protects mentally ill persons who might live in such a residence by defining as a handicap "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h) (1994). By authorizing conditional use treatment of "community residences for the developmentally disabled," then, Section 66.1 is facially discriminatory against mentally ill persons who are prospective occupants of such residences.[12]

---

**9.** Judge Ackerman found that the FHAA applies to Section 66.1 of the MLUL, on the grounds that the FHAA's definition of a handicapped person encompasses the New Jersey MLUL's definition of a developmentally disabled individual. *Elizabeth* at 621.

**10.** In light of the fact that plaintiffs do not contend that the state is bound in this litigation by Judge Ackerman's ruling under preclusion principles, the Court will not consider this line of argument.

**11.** I concur with Judge Ackerman's ruling that the FHAA definition of handicap includes developmental disability as defined in the MLUL. *Elizabeth* at 621.

**12.** Plaintiffs in their motion papers note that Section 66.1 also applies to community residences for persons with head injuries, and make a convincing argument that the FHAA protects such persons as well. Plaintiffs' Amended Complaint, however, only claims discrimination by the State against "developmentally disabled and mentally ill persons." The Amended Complaint was filed in October 1993, two months before the legislation extending Section 66.1 to community residences for persons with head injuries became effective. Since plaintiffs' Amended Complaint does not address this amendment to Section 66.1, it is not before the Court in this action.

As I related *supra*, Section 66.1 applies as well to shelters for victims of domestic violence. This, however, does not negate the legislation's facial discrimination against the disabled. *Elizabeth* at 622 n. 6; *see also Horizon House Developmental Services, Inc. v. Township of Upper Southampton*, 804 F.Supp. 683, 694 (E.D.Pa.1992) ("[T]he fact that the 1,000 foot spacing requirement may also incidentally catch in its net some group homes that serve individuals without handicaps does not vitiate the facial invalidity of the rule which clearly restricts the housing

Since the enabling clauses challenged by the plaintiffs contravene the FHAA on their face, the burden shifts to the State of New Jersey to justify its discrimination. The State must show, first, that the provisions' disparate treatment of developmentally disabled and mentally ill persons serves a legitimate state interest or set of interests, and, second, that no alternative course of action could be adopted that would enable the interest or interests to be served with less discriminatory impact. *Elizabeth* at 624 (citing *Rizzo* at 149).

In the wake of Judge Ackerman's ruling in *Elizabeth*, the State does not argue that the three challenged provisions are justified because they serve to preserve municipalities' residential character. Rather, the State's primary argument is that the provisions serve a state interest in deinstitutionalizing developmentally disabled and mentally ill individuals and integrating them into communities throughout New Jersey. State's Br. in Opp'n to Pls.' Mot. for Summ. J. ("Opp'n") at 2. "A spacing requirement between homes," the Attorney General states, " 'guarantees that residential treatment facilities will, in fact, be 'in the community,' rather than in neighborhoods completely made up of group homes that re-create an institutional environment.' " *Id.* at 5 (quoting *Familystyle of St. Paul, Inc. v. City of St. Paul*, 923 F.2d 91 (8th Cir.1991)).

The Attorney General maintains that among the dangers of a clustering of group homes is that "most of the residences would be isolated from the surrounding neighborhood residents who would be most likely to report abuse, neglect or exploitation" of disabled occupants by staff at a given facility. *Id.* Distance provisions thus aid the safety of those living in such homes, he asserts. As a general matter, the State contends, allowing municipalities to require conditional use permits reflects a recognition that these facilities provide supervisory services and should therefore be subject to "some additional" safety-related local regulation.

The State has not met its burden of justification. First, the record is devoid of evidence that the provisions at issue serve the objective of deinstitutionalization, defined here as the process of enabling mentally ill or otherwise disabled individuals to leave institutions and move into community residences. In fact, the provisions appear to frustrate deinstitutionalization by effectively allowing a statewide cap on the number of mentally ill or otherwise disabled persons who may live in community residences. Further, even if the State had shown that the provisions promote deinstitutionalization, there is no evidence that "no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." *Rizzo* at 149.

Second, integration of handicapped individuals into residential communities may be a worthy objective, but it is not an adequate rationale for the discrimination at issue. The enabling legislation effectively allows the establishment of permanent quotas on the number of developmentally disabled or mentally ill individuals who may live in a given municipality. Such ceiling quotas improperly limit the ability of handicapped persons "to live in the residence of their choice in the community," *House Report* at 24, even if imposed in the name of integration or "de-clustering." *Horizon House* at 694–95; *Larkin* at 291. Moreover, even if the discrimination against the developmentally disabled or mentally ill in the MLUL were justified by a legitimate interest in integration, the state has not set forth any evidence that no less discriminatory alternative is available to serve that interest.[13]

choices of people based on their handicaps...").

**13.** The State relies heavily on *Familystyle of St. Paul, Inc. v. City of St. Paul*, 923 F.2d 91 (8th Cir.1991), which upheld a state and local spacing requirement for group homes on the grounds that it was a legitimate means of facilitating deinstitutionalization and integration of the mentally ill into the community. As one court in this Circuit has noted, the Eighth Circuit in *Familys-tyle* eschewed the Third Circuit's *Rizzo* test for Title VIII claims in favor of Equal Protection Clause standards of review. *Devereux Foundation v. O'Donnell*, Nos. CIV.A. 89–6134, 90–2165, 1991 WL 117394, at *2–3 (E.D.Pa., June 25, 1991). The Eighth Circuit held that since persons suffering from mental retardation are not a suspect class under Supreme Court jurisprudence, the relevant test for legislation which distinguishes between the mentally impaired and

Similarly unavailing is the State's derivative argument that by allowing municipalities to regulate community residences through spacing provisions and other conditional use requirements, the challenged enabling clauses promote the safety of disabled individuals living in these homes. In a decision affirmed by the Third Circuit, the District Court for the Eastern District of Pennsylvania rejected an almost identical argument by a township supervisor defending a 1,000-foot spacing requirement. In that case, the supervisor "testified that the distance requirement is for the benefit of the group home residents: if group homes were grouped near each other, she said, the personnel in the group homes would not tend to their needs." *Horizon House* at 696. The Court found that there was no evidence in the record to support the perception "that harm will come to the residents of the group homes by living within 1,000 feet of each other." *Id.* at 697. As in that case, the record before this Court is devoid of any evidence supporting the safety argument. The Court is left to question whether the State's argument is fair to the men and women who provide services to the disabled in community residences, at least with regard to the issue of whether they are less vigilant than others in a neighborhood about reporting any abuse that they witness or suspect.

Given that the State has not rebutted plaintiff's prima facie case of unlawful discrimination, the Court finds that the three enabling clauses at issue—the conditional use, spacing, and ceiling quota provisions—violate the FHAA. This ruling is consistent with Congress' manifest intent that the FHAA's bar of discrimination against the handicapped would serve to prohibit special conditional use requirements "that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community." *House Report* at 24.

others is whether the provision is rationally related to a legitimate government purpose. *Familystyle* at 94. Under this analysis, the *Familystyle* Court found the distance provision valid. By contrast, the Third Circuit's *Rizzo* test governs this Court's Title VIII review of the enabling legislation at issue. *See Devereux Foundation* at *3–4.

## C. REMEDY

■ In a Title VIII action brought by a private plaintiff, a Court may grant as relief for a violation of the statute "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1) (1994). Construed broadly, consistent with Supreme Court guidance, "this section gives the district court the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair Housing Act." *Park View Heights Corp. v. City of Black Jack*, 605 F.2d 1033, 1036 (8th Cir.1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1081, 63 L.Ed.2d 321 (1980) (interpreting remedial provision of Title VIII before it was expanded slightly by the FHAA). Indeed, a United States District Court is duty-bound "to provide 'such remedies as are necessary to make effective the congressional purpose.'" *Rizzo* at 149. At the same time, the Court will heed the Third Circuit's admonition that the Court must take pains to tailor the remedy to that which is necessary to correct the statutory violation found. *Id.*

1. *Declaration That Section 66.1 Conditional Use Treatment of "Community Residences for the Developmentally Disabled" Is Invalid*

The Court's first step is to declare invalid the three challenged Section 66.1 provisions as they relate to "community residences for the developmentally disabled," defined as including community residences for the mentally ill.[14] The application of these three provisions to such community residences is of no further force and effect, and cannot serve as a proper basis upon which a municipality in New Jersey may treat such community residences as conditional uses.

14. The issues of the three challenged provisions' treatment of community residences for persons with head injuries and of shelters for victims of domestic violence are not before the Court, and are not reached in this opinion.

■ Invalidation of legislation is a strong remedy, but it is not beyond the power of a court where necessary to correct a Title VIII violation. *United States v. City of Parma,* 661 F.2d 562, 578 (6th Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982); *see also Horizon House* at 700 (declaring invalid a 1,000–foot group-home spacing requirement in a township ordinance). Indeed, such invalidation is mandated by Title VIII as amended by the FHAA. 42 U.S.C. § 3615 (1994) ("[A]ny law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.") Clear invalidation is particularly appropriate here given the State's protestations of the validity of the challenged provisions despite this Court's ruling on the issue two years ago.

Similarly, the Attorney General of the State of New Jersey is directed to provide a copy of this opinion and accompanying order to appropriate representatives of the State Legislature, and of each of the State's 568 municipalities. The Legislature and municipalities must be put on notice as to the specific portions of Section 66.1 that have been declared invalid by this Court.

The Court's ruling renders moot plaintiffs' alternative claims that the enabling provisions violate Federal statutes other than Title VIII, as well as Federal and New Jersey constitutional provisions. Therefore, these claims need not be addressed here. *See Elizabeth* at 618 n. 2.

### 2. *Severability*

■ The Court must now direct its attention to New Jersey law to determine whether the provisions of Section 66.1 are separable such that the above declaration shall not affect any portion of the remainder of the MLUL. *New Jersey State Chamber of Commerce v. Hughey,* 774 F.2d 587, 596 (3d Cir.1985). Under New Jersey law, the key standard for determining severability issues

is presumed legislative intent. *Exxon Corp. v. Hunt,* 109 N.J. 110, 534 A.2d 1, 4 (1987).

■ The New Jersey legislature has created a presumption of severability through its enactment of a general severability clause applying to all of its statutes:

> If any title, subtitle, chapter, article or section of the Revised Statutes, or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.

N.J.Stat.Ann. § 1:1–10 (West 1992).

Moreover, the Legislature passed a severability clause to accompany Section 66.1 when it enacted the provision in its original form in a 1978 act. N.J.Stat.Ann. § 40:55D–66.3 (West 1992) states:

> If any provision of this act or the application thereof to any person or circumstance is found unconstitutional, the remainder of this act and the application of such provisions to other persons or circumstances shall not be affected thereby, and to this end the provisions of this act are severable.

On its terms, this clause relates to severability if a portion of the act is found unconstitutional. It nevertheless evinces a legislative intent favoring severability if a provision or application thereof is found otherwise invalid by a court of competent jurisdiction. The strong presumption of severability in this case is not overcome by contrary evidence regarding legislative intent. Accordingly, the Court's invalidation ruling leaves intact the remainder of Section 66.1. This includes the application of the three disputed Section 66.1 provisions to community residences for persons with head injuries and to shelters for victims of domestic violence, which was not at issue in this action.[15]

---

15. By virtue of the Court's ruling, therefore, the following portions of Section 66.1 are null and void as they apply to community residences for

the developmentally disabled as defined in N.J.Stat.Ann. § 40:55D–66.2 (West Supp.1996):

### 3. *Attorneys' Fees and Costs*

The Court will entertain an application from plaintiffs for reasonable attorneys' fees and costs to be assessed against the State, to be submitted 30 days from the entry of this order. 42 U.S.C. § 3613(c)(2) (1994). Concurrently, plaintiffs should submit an application for attorneys' fee to be assessed against the Voorhees Defendants, pursuant to the Order of November 25, 1996, dismissing these defendants.

### III. *CONCLUSION*

The Court will enter an appropriate order, consistent with this opinion, granting partial summary judgment to plaintiffs, partial summary judgment to the State to the extent that the Court dismisses plaintiffs' counts aside from the FHAA count as moot, and relief to the plaintiffs as outlined above.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

Presently before this Court are cross-motions for summary judgment filed by plaintiffs and defendant State of New Jersey.

Upon consideration of the submissions of the parties; and

For the reasons outlined in this court's Opinion of this date;

IT IS on this 30th day of December 1996 hereby

**ORDERED** that plaintiff's motion for summary judgment is **GRANTED** in part and defendant's summary judgment motion is **DENIED** in part insofar as the Court declares that application of the below-quoted portions of N.J.Stat.Ann. § 40:55D–66.1

> .... provided, however, that, in the case of a community residence for the developmentally disabled, community shelter for victims of domestic violence or community residence for persons with head injuries housing more than six persons, excluding resident staff, a zoning ordinance may require for the use or conversion to use of a dwelling unit to such a community residence or shelter, a conditional use permit in accordance with section 54 of the act to which this act is a supplement [§ 40:55D–67]. Any requirements imposed for the issuance of a conditional use permit shall be reasonably related to the health, safety and welfare of the residents of the district; provided,

(West Supp.1996) to community residences for the developmentally disabled (as defined in § 40:55D–66.2) is invalid pursuant to the Fair Housing Act, 42 U.S.C.A., chap. 45 (1994 and West Supp.1996), as amended by the Fair Housing Amendments Act of 1988:

> .... provided, however, that, in the case of a community residence for the developmentally disabled, community shelter for victims of domestic violence or community residence for persons with head injuries housing more than six persons, excluding resident staff, a zoning ordinance may require for the use or conversion to use of a dwelling unit to such a community residence or shelter, a conditional use permit in accordance with section 54 of the act to which this act is a supplement [§ 40:55D–67]. Any requirements imposed for the issuance of a conditional use permit shall be reasonably related to the health, safety and welfare of the residents of the district; provided, however, that a municipality may deny such a permit to any proposed community residence for the developmentally disabled, community shelter for victims of domestic violence or community residence for persons with head injuries which would be located within 1500 feet of an existing such residence or shelter; provided, further, however, that a municipality may deny the issuance of any additional such permits if the number of persons, other than resident staff, resident at existing such community residences or community shelters within the municipality exceeds 50 persons, or 0.5% of the population of the municipality, whichever is greater.

**IT IS FURTHER ORDERED** that the application of the above-quoted portions of

> however, that a municipality may deny such a permit to any proposed community residence for the developmentally disabled, community shelter for victims of domestic violence or community residence for persons with head injuries which would be located within 1500 feet of an existing such residence or shelter; provided, further, however, that a municipality may deny the issuance of any additional such permits if the number of persons, other than resident staff, resident at existing such community residences or community shelters within the municipality exceeds 50 persons, or 0.5% of the population of the municipality, whichever is greater.

§ 40:55D–66.1 to community residences for the developmentally disabled as defined in § 40:55D–66.2 be of no further force and effect in the State of New Jersey;

**IT IS FURTHER ORDERED** that the Attorney General of the State of New Jersey provide this Order and accompanying Opinion to appropriate representatives of the State Legislature, and of each of the State's 568 municipalities, within thirty days of the date of this Order;

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED** in part and plaintiff's motion for summary judgment is **DENIED** in part insofar as the Court dismisses Counts XI, XII and XIII of the Amended Complaint as moot in light of its finding the challenged application of the Section 66.1 provisions void pursuant to the Fair Housing Act;

**IT IS FURTHER ORDERED** that plaintiffs submit their applications for attorneys' fees and costs against the State, and for fees against the Township of Voorhees and Township Committee of Voorhees, within 30 days of the date of this Order.