**DR. GERTRUDE A. BARBER CENTER, INC., Plaintiff,**

v.

**PETERS TOWNSHIP, and Peters Township Zoning Hearing Board, Defendants.**

Civil Action No. 00–286Erie.

United States District Court, W.D. Pennsylvania.

July 2, 2003.

Jon Pushinsky, Mark J. Murphy, Michael C. Pribanic, Pittsburgh, PA, for Plaintiff.

Scott G. Dunlop, James A. McGovern, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for Defendants.

## Opinion

COHILL, District Judge.

Plaintiff in this action is the Dr. Gertrude A. Barber Center ("Barber Center"), a Pennsylvania charitable, non-profit corporation, which provides residential and habilitative services to persons with mental retardation. The Barber Center operates the community-based home at 111 Fawn Valley Drive, in Peters Township, Washington County, Pennsylvania, which is the subject of this litigation.

Defendant Peters Township is a municipality located in Washington County, Pennsylvania. Defendant Peters Township Zoning Hearing Board is a governmental body that adjudicates appeals from decisions of the Peters Township zoning officer and hears requests for special exceptions from the provisions of the Peters Township Zoning Ordinance ("the Ordinance").

This case arises from the defendants' decision not to grant a special exception to the Ordinance. Plaintiff requested the special exception to accommodate the housing needs of four mentally retarded individuals who reside in a Peters Township home owned and operated by the Barber Center. By its complaint, plaintiff seeks declaratory and injunctive relief to ensure the right to operate a home in Peters Township, along with monetary damages, costs and attorney's fees. Plaintiff asserts claims under The Fair Housing Act as amended by the Fair Housing Amendments Act (collectively the "FHA"), 42 U.S.C. § 3601 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and the equal protection clauses of the United States and Commonwealth of Pennsylvania Constitutions. .

A bench trial on plaintiff's claims was held before the undersigned on November 20 and 21, 2002. The Barber Center was represented by Jon Pushinsky, Esquire. Defendants were represented by James A. McGovern, Esquire. Plaintiff presented the testimony of Craig Ezell, Scott Brilhart, Susan Flack, Jean Baker, Holly Marra, and Laurie Callaghan. Defendants called Jim Federlein, Terry Mason, Mary Ann Phelan, Jerry Phelan, and Christopher Wells to testify.

At the conclusion of the hearing, the parties were asked to submit proposed findings of fact and conclusions of law. We have thoroughly reviewed the trial testimony, exhibits, and post-trial submissions of the parties, and now issue the following Findings of Fact and Conclusions of Law.

### Findings of Fact

#### Commonwealth Office of Mental Retardation

The Commonwealth of Pennsylvania provides support and services to citizens with mental retardation through its Office of Mental Retardation ("OMR"). Tr. 11/20/02 at 8–9. Mental retardation is generally characterized by sub-average intellectual functioning, and associated deficits in learning, maturation, and social skills. Tr. 11/20/02 at 14.

Craig Ezell, Program Representative for OMR, has worked for the office for twenty-nine years. Tr. 11/20/02 at 13. He testified that OMR's goal is to assist those with mental retardation to live "everyday lives." The policy of OMR is that people with mental retardation are best served in their own homes and communities, and not in large facilities. If they cannot live with a family member, it is OMR's policy to place them in a home in the community with others having mental retardation. Tr. 11/20/02 at 17–19. This policy is consistent with a national preference for community-based preferences. Tr. 11/20/02 at 22–23.

OMR provides a variety of residential supports for the mentally retarded. These include intermediate care facilities for mental retardation ("ICFMR"). Tr. 11/20/02 at 9–11.

An ICFMR is a particular type of state licensed and regulated residential facility that must have at least four residents. Tr. 11/20/02 at 29, 31. Staff must be present at each ICFMR to provide appropriate assistance to the residents, and certain professional services, such as medical, nursing, and dietary services, must be available in the community. Tr. 11/20/02 at 39–41.

ICFMRs are subject to a state certification process and are licensed by the state. Tr. 11/20/02 at 34, 53, 70. Licenses for the homes must be renewed annually. Tr. 11/20/02 at 37. In order for an ICFMR to maintain its license, it must have at least four residents. Tr. 11/20/02 at 29–30.

#### Closing of the Western Center

The Commonwealth formerly operated the Western Center, a large residential ICFMR for persons with mental retardation located in Canonsburg, Washington County, Pennsylvania. Tr. 11/20/02 at 14. Under a court-approved settlement in *Richard C. v. White*, Civil Action No. 89–2038 (W.D.Pa.), the Commonwealth was required to close Western Center and move its residents into the community. Tr. 11/20/02 at 25–26; Pl.'s Ex. 1. The settlement was approved on June 22, 1993. Pl.'s Ex. 2.

The settlement required that residents be offered placement in small, community-based homes through the Title XIX waiver program if their families did not provide them with housing. Tr. 11/20/02 at 29. "Waiver" refers to a program under Medicaid that allows the Medicaid rules to be suspended. Tr. 11/20/02 at 9. Homes that are established and funded through the waiver program are not required to

comply with certain rules and regulations applicable to small, community-based intermediate care facilities for the mentally retarded, or ICFMRs. Tr. 11/20/02 at 10.

The majority of the affected individuals elected waiver services. Tr. 11/20/02 at 27. All Western Center residents requiring such residential placements who did not elect to participate in the waiver program had to be placed in ICFMRs. Tr. 11/20/02 at 27–28.

The Fawn Valley residents are from families which did not elect a waiver and which made no placement arrangements when Western Center was closed. Tr. 11/20/02 at 157. The Commonwealth was therefore obliged to provide them with housing. The families of the Fawn Valley residents opposed the closing of the Western Center.

The Commonwealth solicited proposals from providers that were willing to offer community-based residential services to the residents of the Western Center. Tr. 11/20/02 at 33. The Commonwealth contracts with providers for ICFMRs. The Barber Center is one such provider. Tom Ridge, then-Governor of Pennsylvania, personally contacted the Barber Center and requested that it submit a proposal to provide community-based residential services to some of the remaining residents of Western Center. Tr. 11/20/02 at 140.

Funding for community placements for former Western Center residents is provided by the Commonwealth. Tr. 11/20/02 at 31, 129. Funding is provided per diem, based on a minimum of four residents. Provider agencies submit budgets to the Commonwealth. Agencies can only bill for the actual number of residents in the home; when a vacancy occurs in an ICFMR, the agency receives a reduced amount of funding from the Commonwealth. Tr. 11/20/02 at 130–133.

### The Barber Center

Plaintiff Barber Center is a nonprofit corporation based in Erie, Pennsylvania. Tr. 11/20/02 at 143; Pls.' Ex. 7, 8. The Barber Center provides habilitative and rehabilitative services, including job training, day programming and residential programming to persons with mental retardation and/or autism in Allegheny, Bucks, Delaware, Erie, Montgomery, Philadelphia, and Washington counties, Pennsylvania. Tr. 11/20/02 at 141–143.

Most of the Center's residential clients reside in four-person homes located in single-family neighborhoods. This is in keeping with the Barber Center's philosophy that persons with disabilities should have an opportunity to live in desirable residential neighborhoods similar to that of persons who do not have disabilities. Tr. 11/20/02 at 145–146. Mr. Ezell testified that the persons who are served by the Barber Center are unlikely, due to the nature of their disabilities, to participate in competitive employment, marry, establish their own families, or purchase their own homes. Tr. 11/20/02 at 16. Placement in small, residential, neighborhood-based homes, such as the Fawn Valley Drive home, provides persons with mental retardation with the opportunity to develop, gain normalization skills, and be integrated into the community. Tr. 11/20/02 at 19–20, 22, 28, 32.

When a vacancy occurs in an ICFMR, the provider agency generally receives a reduced amount of funding from the Commonwealth, and is responsible for making up the difference between the amount needed to operate the home and the amount of funding provided by the Commonwealth. Tr. 11/20/02 at 42–43, 130–133. The Barber Center needs to have the minimum number of four residents in each of its ICFMRs in Allegheny and Washington counties. Tr. 11/20/02 at 153. It is

financially unable to maintain a permanent vacancy. Tr. 11/20/02 at 133. During the time in which there were three residents in the Fawn Valley Drive home, the Barber Center received a reduced amount of funding from the Commonwealth. Tr. 11/20/02 at 163. By limiting its community-based ICFMRs to four residents, the Barber Center is maintaining occupancy at the minimum level required by applicable licensing and funding regulations. Tr. 11/20/02 at 64, 153.

### The Fawn Valley Drive Property

The Barber Center operates six ICFMRs for former residents of the Western Center. One of these is the home located at 111 Fawn Valley Drive, Peters Township, Washington County, Pennsylvania. Plaintiff purchased the home on or about December 30, 1999. (Tr. 11/20/02 at 151).

The Fawn Valley residents are from families who did not elect a waiver and who made no placement arrangements. Tr. 11/20/02 at 157. The Commonwealth was therefore obliged to provide them with housing.

The residents chosen to live in the home on Fawn Valley Drive were four former Western Center adult male residents, who had been long-term roommates and/or who had lived in close proximity to each other for many years at the Center. Tr. 11/20/02 at 154. They range in age from 34 to 48 years. Tr. 11/20/02 at 222.

In January 2000, before any residents moved into the house, the Barber Center participated in a community meeting to explain to Peters Township residents what it would be doing with the Fawn Valley Drive property, and to answer questions posed by other neighborhood residents. Tr. 11/20/02 at 90–91.

The Fawn Valley Drive home operates as the functional equivalent of a biological family home for the four men with mental retardation who live there. Tr. 11/20/02 at 53–54, 146–147, 156–157, 167, 180–181, 213–214. Staff is present at the home whenever the residents are there. The staff to client ratio is 3:4 during awake hours and 2:4 when the residents are asleep. Tr. 11/20/02 at 201. This staffing pattern provides a greater level of supervision than the Commonwealth's ICFMR regulations require. Tr. 11/20/02 at 39–40. One staff member generally leaves the home at 9:00 P.M. and two leave at 11:00 P.M. Tr. 11/20/02 at 205.

Several days prior to the Zoning Hearing Board proceedings, the Barber Center became aware of neighbors' complaints about staff noise during shift change and noise made by one particular resident. Tr. 11/20/02 at 175–176, 186–189; Tr. 11/21/02 at 139–141; Pl.'s Ex. 15. The Barber Center promptly sent a memo to the staff about noise, and talked to staff members. Tr. 11/20/02 at 175, 186–189; Pl.'s Ex. 16. Neighbors testified that the noise lessened after they spoke to the staff. Tr. 11/21/02 at 69–70. The resident who is alleged to have made the most noise has since died. Tr. 11/20/02 at 176–177.

Several neighbors testified that excessive noise is still caused by the staff and residents. Tr. 11/21/02 at 64,65, 78–79, 95, 117.

The Barber Center identified a supervisory staff person, to be notified in case of subsequent complaints from neighbors. Tr. 11/20/02 at 218. Holly Marra has been the Qualified Mental Retardation Professional ("QMRP") responsible for the Fawn Valley home since January of 2000. Tr. 11/20/02 at 200–201, 218. Ms. Marra testified that since assuming that position she has not received a single complaint about neighborhood noise. Tr. 11/20/02 at 217–219. None of the neighbors who are bothered by staff or resident noise has ever contacted the Barber Center's local office or communicated their concerns to a su-

648

pervisory staff member. Tr. 11/20/02 at 88, 99, 121–122. When neighbors brought complaints to the staff at the Fawn Valley home, the Barber Center's staff was responsive to the complaints and addressed any problems of which they were made aware. Tr. 11/21/02 at 63, 69–70, 85.

### Zoning and the Fawn Valley Drive Property

Defendant Peters Township Zoning Hearing Board is a governmental body that adjudicates appeals from decisions of the Peters Township zoning officer, as well as requests for special exceptions from the Peters Township Zoning Ordinance. Tr. 11/21/02 at 6. Its members are appointed for fixed terms by the Peters Township Council. Tr. 11/21/02 at 45. Peters Township is a recipient of federal financial assistance. Tr. 11/20/02 at 197.

The Peters Township Zoning Ordinance defines "Family" as follows:

A single person occupying a dwelling unit and maintaining a household, two or more persons related by blood or marriage or adoption occupying a dwelling unit, living together and maintaining a common household, including not more than one boarder, roomer or lodger; or not more than three (3) unrelated persons occupying a dwelling unit, living together and maintaining a common household (group quarters). (Pl.'s Ex. 12, 13).

The Fawn Valley Drive property is zoned R–1, which designates a single-family use. Tr. 11/21/02 at 12; Pl.'s Ex. 13. The minimum lot size for an R–1 single-family home in Peters Township is one-half acre. Tr. 11/20/02 at 94.

The lot on which the Fawn Valley Drive home is located is less than one acre. Tr. 11/20/02 at 171.

By letter dated January 7, 2000, Peters Township Planner/Zoning Officer Scott Brilhart notified the Barber Center that if it wished to establish a group home with more than three unrelated persons occupying a dwelling unit, it would have to apply for a special exception as a "use not provided for" under the Peters Township Zoning Ordinance, and that a hearing would be held before the Peters Township Zoning Hearing Board. Tr. 11/20/02 at 92; Pl.'s Ex. 13. The Barber Center did not apply for the special exception.

On April 11, 2000, Peters Township initiated an action in equity in the Washington County Court of Common Pleas, to enjoin the Barber Center from using the Fawn Valley Drive home as a residence for four persons with mental retardation. Tr. 11/20/02 at 68–74. Judge Gladden of the Court of Common Pleas of Washington County granted injunctive relief, and scheduled a hearing for April 12, 2000.

Following that hearing, Judge Gladden dissolved the injunction and directed the Barber Center to "apply for the proper zoning requirements under the Zoning Ordinance of Peters Township." Tr. 11/20/02 at 68–74.

On April 12, 2000, the four former Western Center residents moved into the Fawn Valley Drive home. Tr. 11/20/02 at 68–74. The Barber Center was issued a certificate of compliance by the Commonwealth of Pennsylvania, indicating that the Fawn Valley Drive home satisfied all state licensing requirements. Tr. 11/20/02 at 37–38; Pl.'s Ex. 6. The certificate has been renewed on an annual basis. Tr. 11/20/02 at 37–38; Pl.'s Ex. 6.

The Barber Center submitted an Application for Variance to the Zoning Hearing Board of Peters Township on April 19, 2000. Tr. 11/20/02 at 98, 117–118. Although the Barber Center's zoning application initially requested a variance, it was processed as a request for a special exception at the Barber Center's request. Tr. 11/20/02 at 98–99. The request for a spe-

cial exception conformed with the determination of the Peters Township zoning officer/planner, Scott Brilhart, that a special exception was required since the zoning ordinance had no provision for group homes for persons with mental retardation. Tr. 11/20/02 at 118, Tr. 11/20/02 at 8.

Peters Township's zoning officer/planner, Scott Brilhart, testified at the hearing. He prepared a written report and recommendation regarding the plaintiff's application. Tr. 11/20/02 at 99–101; Pl.'s Ex. 14. Mr. Brilhart stated that "a group home is a use not provided for and should be reviewed as a special exception." Pl.'s Ex. 14. The report discussed township's obligations under the Fair Housing Act, and recommended "approval of the requested special exception." Pl.'s Ex. 14. The recommendation reflected the views of Peters Township's Director of Planning. Tr. 11/20/02 at 101.

Decisions regarding applications for special exceptions, use not provided for, are made by defendant Zoning Hearing Board. Tr. 11/20/02 at 99; Tr. 11/20/02 at 9–10. James Federlein, chairman of the Zoning Hearing Board, testified at the hearing. The Barber Center's special exception application was the subject of a hearing before the Zoning Hearing Board on July 18, 2000. Tr. 11/20/02 at 102, 109–111. The zoning officer/planner informed the Zoning Hearing Board of his view that the requested special exception should be granted. Tr. 11/20/02. at 102–103. The Zoning Hearing Board heard evidence offered by the Barber Center in support of its special exception application, as well as the testimony from concerned neighbors of the Fawn Valley Drive property. Tr. 11/20/02 at 106; Tr. 11/21/02 at 23–24. Neighbors testified regarding traffic, parking concerns, and noise from both residents and the staff during the 11:00 P.M. shift change. Tr. 11/21/02 at 25–26.

The Zoning Hearing Board denied the Barber Center's application for a special exception. Tr. 11/21/02 at 26; Defs.' Ex. S. Chairman James Federlein reasoned that the home for the four men with mental retardation was similar to a personal care home. Tr. 11/21/02 at 17. According to Mr. Federlein, since the zoning ordinance provided for personal care homes for the elderly and the residents of the Barber Center's Fawn Valley Drive did not meet the Ordinance's age requirement (Tr. 11/20/02 at 221–222), the Barber Center should have applied for a special exception to operate a personal care home for other than the "elderly." Tr. 11/21/02 at 17–19, 41.

Defendants acknowledged that the Fawn Valley Drive home satisfied every element of the Ordinance's definition of "Family" except that there were four, as opposed to three, unrelated residents. Tr. 11/20/02 at 123; Tr. 11/21/02 at 42. Defendants stated that a special exception to operate as a "personal care home" was available, whereas a special exception to operate as a "family" home was not. Tr. 11/21/02 at 13, 16–19. However, even if the Barber Center had sought approval to operate as a personal care home, the same considerations that led the Zoning Hearing Board to deny the special exception that was requested may have led to rejection of an application for a personal care home exception. Tr. 11/21/02 at 40, 52. The issues raised by the neighbors of the Fawn Valley Drive home are similar to those raised by neighbors of other group homes for persons with mental retardation throughout the Commonwealth. Tr. 11/20/02 at 79, 148.

Furthermore, had the Barber Center sought leave to operate as a personal care home, it would have been restricted, under the Ordinance, to lots with a minimum size of one acre. Tr. 11/21/02 at 20. Thus the

Barber Center's residents would have been excluded from a large portion of the residential properties in Peters Township, including the Fawn Valley Drive home. Tr. 11/20/02 at 125–126; Tr. 11/21/02 at 36; Defs' Ex. Y.

Peters Township does not restrict the number of related people who are permitted to live in R–1 zoned homes. Even biologically-related families with twelve members are permitted to reside in R–1 zoned homes. Tr. 11/20/02 at 196. In other communities in the Commonwealth, ICFMRs such as the Fawn Valley Drive home are located on lots smaller than the one-half acre minimum lot size required by Peters Township for single family homes. Tr. 11/20/02 at 142.

There is no residential district in Peters Township where a group residence for four unrelated persons with mental retardation could locate, without prior municipal approval. Tr. 11/20/02 at 94, 197.

With the exception of the Fawn Valley Drive home, there are no small, family-like group homes for persons with mental disabilities in Peters Township. Tr. 11/20/02 at 195. The residents of the Fawn Valley Drive home have benefitted from their placement there. Tr. 11/20/02 at 149–150, 160, 224–225.

As a result of defendants' practices and policies, the Barber Center has had to redirect staff from performing their normal duties to matters arising from their denying the requested special exception and this legal action. The cost to the Barber Center has been $2,400.00. Tr. 11/20/02 at 164–166.

Defendants do not experience either an undue financial or administrative burden as a result of four men with mental retardation living in the Barber Center's Fawn Valley Drive home. Tr. 11/20/02 at 196.

## Conclusions of Law

Federal jurisdiction exists under 28 U.S.C. §§ 1331 and 1343, and we have supplemental jurisdiction over plaintiff's state law claim under 28 U.S.C. § 1367. Venue is proper since the events giving rise to this action occurred in this district, and all of the parties are located here.

Our review of the Zoning Hearing Board's decision is de novo. *Cohen v. Township of Cheltenham*, 174 F.Supp.2d 307, 316 (E.D.Pa.2001).

### The Fair Housing Act

#### A.

In 1988, the Fair Housing Act was amended to protect persons with disabilities. Courts have recognized this expansion as "a clear pronouncement of a national commitment to **end the unnecessary exclusion of persons with handicaps from the American mainstream.**" *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1105 (3d Cir.1996) (emphasis in original) (quoting *Helen L. v. DiDario*, 46 F.3d 325, 333 n. 14 (3d Cir.) *cert. denied*, 516 U.S. 813, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995)).

The FHA is to be broadly construed so as to effectuate the goal of eradicating housing discrimination of persons with disabilities. *Id.* at 1105(citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972)).

Under the FHA, it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... a person residing in or intending to reside in that dwelling.... 42 U.S.C. § 3604(f)(1)(B).

Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal op-

portunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The statute operates so as to invalidate "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice. . . ." 42 U.S.C. § 3615. The Supreme Court has instructed that zoning provisions describing who or how many people may compose a family unit, such as the Peters Township zoning provision which defines "Family" so as to include any number of people related by blood, marriage or adoption but no more than three unrelated people living together as a household unit, are subject to review under the FHA. *City of Edmonds v. Oxford House*, 514 U.S. 725, 728, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).

The Act permits claims of unlawful housing discrimination to be filed against municipal entities such as Peters Township and the Peters Township Zoning Hearing Board. *Cohen v. Township of Cheltenham*, 174 F.Supp.2d 307, 320 (E.D.Pa. 2001). Indeed, the lower federal courts applying the FHA "have consistently invalidated a wide range of municipal licensing, zoning and other regulatory practices affecting persons with disabilities." *Alliance for Mentally Ill v. City of Naperville*, 923 F.Supp. 1057, 1069 (N.D.Ill.1996) (quoting *Potomac Group Home Corp. v. Montgomery County*, 823 F.Supp. 1285, 1294 (D.Md.1993)); *Doe v. Butler*, 892 F.2d 315 (3rd Cir.1989); *ARC of New Jersey, Inc. v. New Jersey*, 950 F.Supp. 637 (D.N.J.1996); *Judy B. v. Borough of Tioga*, 889 F.Supp. 792 (M.D.Pa.1995).

■ In case after case, courts have concluded that the FHA has been violated where municipalities have attempted to prevent or restrict persons with disabilities from living in the single family-zoned homes of their choice, even when the number of residents exceeds the number of unrelated people permitted to live together under the applicable zoning ordinances. *See, e.g., Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179 (E.D.N.Y.1993); *Oxford House v. Township of Cherry Hill*, 799 F.Supp. 450 (D.N.J.1992); *Oxford House Evergreen v. City of Plainfield*, 769 F.Supp. 1329 (D.N.J.1991). Indeed, this Court recently approved a consent order in a case involving the Borough of Baldwin that is factually similar to this case. *Dr. Gertrude A. Barber Center v. Borough of Baldwin*, Civil Action No. 01–84 Erie (W.D.Pa.2001).

■ The FHA has been interpreted to permit third-party standing. *Hovsons*, 89 F.3d at 1100, n. 2 (citing *Havens Realty Corp. v. Coleman* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). The " 'aggrieved person' does not necessarily have to be the person discriminated against." *Hovsons*, 89 F.3d at 1100, n. 2 (quoting *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1282 n. 6 (3d Cir.1993)). Courts have clearly held that a person or company in the business of providing housing for handicapped persons that has been prevented from doing so due to alleged discrimination, has standing to sue under the FHA. *ReMed Recovery Care Centers v. Township of Willistown*, 36 F.Supp.2d 676, 682–83 (E.D.Pa.1999) (citing cases). The Barber Center, as a provider of housing services to persons with disabilities, has standing to pursue an action under the FHA.

"Handicap" is defined in the statute to include a physical or mental impairment which substantially limits one or more of a person's major life activities; a record of having such an impairment; or being regarded as having such an impairment 42 U.S.C. § 3602(h). We conclude that the mentally retarded individuals served by the Barber Center qualify as handicapped persons under the Act.

In addition to bringing an action under the FHA, the Barber Center asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 794(a) and the equal protection clause of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983. All of these laws and sources of rights provide bases for challenging housing discrimination against persons with disabilities. *Regional Economic Community Action Program v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir.2002) (ADA and § 504 apply to zoning decisions); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (Equal Protection clause governs challenge to discrimination against group home residents). The Court concludes that the FHA analysis applies equally to the Barber Center's other claims of unlawful discrimination. Consequently, our discussion will focus on the law that has developed under the FHA.

### B.

Unlawful discriminatory housing practices in violation of the FHA may be brought under three distinct legal theories: failure to reasonably accommodate the housing needs of persons with disabilities, disparate impact, and disparate treatment. *Lapid–Laurel, L.L.C. v. Zoning Board of Adjustment of the Township of Scotch Plains*, 284 F.3d 442, 448 (3d Cir.2002). The evidence presented at trial establishes defendants' liability under each of these theories.

#### Reasonable Accommodation

█ Defendants have failed to reasonably accommodate the housing needs of the Barber Center and its disabled residential clients.

The purpose of the reasonable accommodation of the FHA is to facilitate the integration of persons with disabilities into all communities. Thus, the provision "prohibits the enforcement of zoning ordinances and local housing policies in a manner that denies people with disabilities access to housing on a par with that of those who are not disabled." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir.2002) (quoting *Hovsons*, 89 F.3d at 1104).

FHA reasonable accommodation claims are analyzed under a burden-shifting framework. *Lapid–Laurel, L.L.C.*, 284 F.3d at 457. To establish a prima facie case, a plaintiff must show that the requested accommodation was necessary in order for handicapped persons to have an equal opportunity to use and enjoy a dwelling. *Id.*

In order to establish that the requested accommodation was necessary, plaintiffs must demonstrate that "but for the accommodation [the residents of the home] will be denied an equal opportunity to enjoy the housing of their choice." *Id.* at 460. To meet the "necessary" standard, plaintiffs must show a link between the proposed accommodation and the equal opportunity being sought. *Id.* A provider of housing for the handicapped may establish the necessity of a requested accommodation through evidence that it must maintain a certain minimum level of occupancy for its own financial viability. *Brandt v. Village of Chebanse*, 82 F.3d 172, 174 (7th Cir.1996).

In this case, the Barber Center requested that it be accommodated by being permitted to operate in a single-family zoned neighborhood, even though four, as opposed to three, unrelated people would reside in the home.

We find that the Barber Center has established the necessity of having four residents in the Fawn Valley Drive home. As an ICFMR, the home must house at least four people with mental retardation

in order to maintain its license and funding from the Commonwealth.

We also conclude that the Barber Center has established that the requested accommodation is necessary, through the undisputed evidence of functional gains experienced by persons with disabilities through residence in the community. *Lapid–Laurel, L.L.C.,* 284 F.3d at 461. Necessity can be demonstrated through evidence that placement in small neighborhood-based homes serves a therapeutic purpose. *Bryant Woods Inn., Inc. v. Howard County,* 124 F.3d 597, 604 (4th Cir.1997).

To meet its initial evidentiary burden, the Barber Center must also prove that the requested accommodation was necessary to afford handicapped persons "an equal opportunity to use and enjoy a dwelling." *Lapid–Laurel, L.L.C.,* 284 F.3d at 457. In *Lapid–Laurel, L.L.C.,* the Third Circuit considered the meaning of "equal opportunity" under the FHA, and quoted with approval the district court's reasoning in the *Bryant Woods* decision: "[T]he Act prohibits local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities." *Id.* at 459–60 (quoting *Bryant Woods,* 911 F.Supp. 918, 946 (D.Md.1996)).

Under *Lapid–Laurel, L.L.C.,* the equal opportunity at stake in this case is the opportunity for four persons with mental retardation to live in the single-family neighborhood of their choice on the same basis as others. *Id.* at 460. The accommodation requested by the Barber Center is specifically aimed at effectuating the right of the Barber Center's Fawn Valley Drive residents to maintain their community living arrangement.

We conclude that the accommodation requested by the Barber Center was necessary to provide the residents of the Fawn Valley Drive home with an equal opportunity to enjoy the single-family dwelling of their choice. Defendants have denied this accommodation at every turn. Defendants filed for injunctive relief in the Washington County Court of Common Pleas to enjoin the Barber Center from placing four men with mental retardation in the home; they denied the Barber Center a special exception; they would prohibit the Barber Center from operating in many of the single-family homes in the Township by requiring it to locate on a lot having the minimum size of one acre; and, by suggesting that the Barber Center should have requested a variance as opposed to a special exception, defendants have directed the Barber Center in an untenable direction. Tr. 11/20/02 at 119–121; Tr. 11/21/02 at 39–40.

Accordingly, we find that the plaintiffs have established a prima facie case showing that the defendants have failed to grant a reasonable accommodation that is necessary to afford the plaintiff an equal opportunity to enjoy the residential housing of their choice.

Once a prima facie case has been established, the Third Circuit shifts the burden of proof, and requires the municipality to show that the accommodation proffered by the plaintiff is not reasonable. *ReMed,* 36 F.Supp.2d at 684 (citing *Hovsons,* 89 F.3d at 1104.) To meet this burden, defendants must prove that (1) the requested accommodation imposes an undue financial and administrative burden on the Township, (2) would impose undue hardship on the Township, or (3) that it requires a fundamental alteration in the nature of the Township's zoning scheme. *Hovsons,* 89 F.3d at 1104.

The defendants have acknowledged that they would suffer no undue financial or

administrative burden by awarding the Barber Center the accommodation it has requested. Tr. 11/20/02 at 196. Defendants argue, however, that permitting a four-person ICFMR on Fawn Valley Drive would require a fundamental alteration in the Peters Township zoning program.

Testimony at trial established that some neighbors continue to oppose the home, and that they remain concerned about noise from the Fawn Valley Drive residents and from the staff at the evening shift-change. We must conclude that this does not meet the defendants' evidentiary burden. The hearing produced conflicting testimony regarding noise, and established that no complaints were communicated directly to the Barber Center office or supervisory staff. Furthermore, there was credible testimony that the staff at the Fawn Valley Drive home responded appropriately to the complaints they received from the neighbors. There is no more traffic generated by the Barber Center home on Fawn Valley Drive than would likely be generated by families having several drivers and family members who work different shifts. Tr. 11/20/02 at 78. Furthermore, evidence at trial showed that the neighbors who complained about noise from the Barber Center and its residential clients remained unconcerned about repeated police calls to other homes in the neighborhood. Tr. 11/21/02 at 144–145, 154–156.

Additionally, the Court has also considered that the residents of the Fawn Valley Drive home must live somewhere, and it is undisputed that there is no zoning district within Peters Township in which four unrelated persons with mental retardation are permitted to live in a single household. R. 11/20/02 at 197.

The FHA is to be interpreted broadly so as to effectuate the goal of integrating persons with mental retardation into the community, and we must conclude that the neighbors' complaints are insufficient justification to defeat a necessary reasonable accommodation.

We specifically reject defendants' argument that they would consider granting a request for a special exception to operate a personal care home, which, under the Ordinance, would have to be located on a lot of at least one acre. This alternative is not a reasonable accommodation, since it would preclude the Barber Center's residents from living in the home and neighborhood of their choice. Repeatedly, the federal courts have held that the FHA protects the right to live in the particular dwelling chosen by the residents, or by the agency providing such housing. *See, e.g. Hovsons*, 89 F.3d at 1103–1106 (Township's willingness to allow homes in other areas did not constitute reasonable accommodation); *City of Edmonds v. Washington State Bldg.Code Council*, 18 F.3d 802, 806 (9th Cir.1994) ("Congress intended the FHA to protect the right of handicapped persons to live in the residence of their choice in the community"), *aff'd sub nom, City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995); *ReMed*, 36 F.Supp.2d at 685 ("the fact that other housing in and around Willistown is available for ReMed residents does not render unnecessary the accommodation that would enable ReMed residents to live in the house of their choice, the one at 84 Devon Road"); *Oxford House, Inc.*, 819 F.Supp. at 1185 n. 10 (FHA "dictates that a handicapped individual must be allowed a particular dwelling, not just some dwelling somewhere in the town"); *Oxford House–Evergreen*, 769 F.Supp. at 1344 (holding that a defense based upon the availability of alternative locations was without merit).

Defendants Peters Township and the Peters Township Zoning Hearing Board have failed to meet their burden of show-

ing that the requested accommodation is not reasonable. We therefore conclude that defendants have violated their legal duty to reasonably accommodate the right of the Barber Center to operate a small, family home for four persons with mental retardation in the single-family home of their choice, which is 111 Fawn Valley Drive.

### Disparate Impact

█ Defendants' zoning policies and practices have a disparate impact on persons with disabilities.

We review FHA disparate impact claims under the framework established for disparate treatment cases brought under Title VII. *Lapid–Laurel, L.L.C.*, 284 F.3d at 466 (citing *Resident Advisory Board v. Rizzo*, 564 F.2d 126, 148 (3d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978)). Under this rubric, a plaintiff must first prove that defendants' policies or practices have a greater adverse impact on persons with disabilities than on non-protected persons. If the plaintiff demonstrates a prima facie case, then the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available. *Lapid–Laurel, L.L.C.*, 284 F.3d at 466–67 (citing *Rizzo*, 564 F.2d at 149).

To establish that the FHA has been violated, a plaintiff alleging a disparate impact theory may show (1) the occurrence of certain outwardly neutral practices, which have (2) a significantly adverse or disproportionate impact on persons with disabilities. *Lapid–Laurel, L.L.C.*, 284 F.3d at 467 (citing *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir.1997)).

Plaintiff challenges the Peters Township Zoning Ordinance, which defines "Family" as follows:

A single person occupying a dwelling unit and maintaining a household, two or more persons related by blood or marriage or adoption occupying a dwelling unit, living together and maintaining a common household, including not more than one boarder, roomer or lodger; or not more than three (3) unrelated persons occupying a dwelling unit, living together and maintaining a common household (group quarters). (Pl.'s Ex. 12, 13).

We conclude that plaintiff has established that the Ordinance's definition of "Family" has a disparate impact on the disabled. Whereas non-disabled persons would have the ability to enter into a variety of living arrangements so as to satisfy the Ordinance, residents of the Barber Center cannot. The evidence established that an ICFMR is the only feasible option for maintaining the residents in the community, and an ICFMR must have at least four residents. By restricting the definition of "Family" to no more than three unrelated people, defendants have ensured that no ICFMR may locate in a single-family neighborhood. Indeed, defendants have acknowledged that there is no zoning district within Peters Township in which four unrelated persons with mental retardation are permitted to live together in a single household as of right. Tr. 11/20/02 at 197.

Since the Barber Center has met its evidentiary burden, defendants must now show that they have a legitimate, non-discriminatory reason for their action, and that no less discriminatory alternatives are available. *Lapid–Laurel, L.L.C.*, 284 F.3d at 467. Defendants have failed to establish that they had a legitimate non-discriminatory reason for denying the requested special exception. Furthermore, we have determined that compelling the Barber Center to locate on a one acre lot, which is the alternative the defendants have put forth, violates the goals of the FHA. We therefore conclude that defendants have

failed to prove the absence of less discriminatory alternatives.

Accordingly, we find that the Barber Center has shown that defendants' policies and practices operate so as to make desirable housing unavailable to persons with disabilities and, therefore, those policies and practices have an unlawful disparate impact on individuals with disabilities.

### Disparate Treatment

Defendants' zoning policies and practices result in disparate treatment of persons with disabilities.

■ A case of disparate treatment under the FHA may be established "by demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others." *ARC of New Jersey v. New Jersey*, 950 F.Supp. 637, 643 (1996). A plaintiff alleging such a claim need not prove malice or discriminatory animus. *Id.* The thrust of a disparate treatment claim is that "the defendant expressly treats someone protected by the FHA in a different manner than others." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir.1995).

■ Once a plaintiff establishes that a statute or ordinance if facially discriminatory, the burden shifts to the governmental defendant to justify the disparate treatment. *ARC*, 950 F.Supp. at 643. In this Circuit, "justification must serve, in theory and practice, a legitimate, bona fide interest of the Title VII defendant, and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." *Id.* (citing *Rizzo*, 564 F.2d at 149). If the defendant is able to provide evidence showing that no less restrictive course of action could be adopted, the burden shifts back to the plaintiff to demonstrate that other action could be taken. If a prima facie case

is not rebutted, a violation of the FHA has been proved. *Id.*

With this familiar famework in mind, we again turn to the Ordinance, which provides the following definition of "Family":

A single person occupying a dwelling unit and maintaining a household, two or more persons related by blood or marriage or adoption occupying a dwelling unit, living together and maintaining a common household, including not more than one boarder, roomer or lodger; or not more than three (3) unrelated persons occupying a dwelling unit, living together and maintaining a common household (group quarters). (Pl.'s Ex. 12, 13).

A biologically related family of any size may live in any neighborhood in Peters Township, since the Ordinance does not limit the number of related people who may live in a single-family dwelling as a family. However, the Ordinance limits the number of unrelated people who may live together as a family to three. Thus there is no residential neighborhood in Peters Township where the residents of the Barber Center's Fawn Valley Drive home may live as of right.

Defendants filed a state court action to prevent four persons with mental retardation from moving into the Barber Center's Fawn Valley Drive home. Defendants would restrict four people with disabilities who desire to live together to neighborhoods with a minimum lot size of one acre. They would also have to obtain counsel, seek special leave, participate in a formal hearing, and be subjected to the displeasure of disgruntled members of the community. The difference in treatment between families of related persons with more than four members and families of unrelated persons with four members falls under the anti-discrimination provisions of the FHA. *City of Edmonds*, 514 U.S. 725,

731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).

We conclude that defendants have imposed significant burdens on the creation of single-family homes by persons with disabilities that are not applicable to the non-disabled. Defendants have not justified this disparate treatment. Accordingly, we find that the plaintiff has established its disparate treatment claim against both defendants.

### Conclusion

For the reasons set forth above, we conclude that defendants Peters Township and Peters Township Zoning Hearing Board have violated the Barber Center's rights under the FHA under theories of a failure to reasonably accommodate, disparate impact, and disparate treatment. The Barber Center has established that defendants have failed to reasonably accommodate its desire to provide housing to persons with disabilities in a single-family neighborhood in violation of 42 U.S.C. § 3604(f)(3)(B); they have made housing unavailable to persons with disabilities in violation of 42 U.S.C. § 3605(f)(1); and they maintain a zoning ordinance that permits discrimination against those with disabilities in violation of 42 U.S.C. § 3615. Our conclusion is applicable to the Barber Center's ADA, § 504, and equal protection claims as well.

Accordingly, we will enter judgment in favor of the plaintiff and against the defendants on all claims raised in the complaint, and will issue a final injunction directing defendants to issue the requested special exception or otherwise permit the Barber Center to use its Fawn Valley Drive home as a licensed ICFMR for four persons with mental retardation. Plaintiff's request for an award of damages in the amount of $2,400.00 and for attorney's fees and costs will also be granted.

An appropriate Order follows.

### ORDER

AND NOW, to-wit, ___ this day of July, 2003, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that judgment be and hereby is entered in favor of the plaintiff Barber Center and against the defendants Peters Township and Peters Township Zoning Hearing Board on all claims. Defendants are hereby ordered to issue the special exception requested by the plaintiff, or to otherwise permit plaintiff to use the home at 111 Fawn Valley Drive as a licensed ICFMR for four persons with mental retardation.

IT IS FURTHER ORDERED that damages be and hereby are assessed in favor of the plaintiff and against the defendants in the amount of $2,400.00.

IT IS FURTHER ORDERED that plaintiff is entitled to an award of attorney's fees and costs.