**SHARPVISIONS, INC., Plaintiff**

v.

**BOROUGH OF PLUM,**
**et al., Defendants.**

**No.  06cv0580.**

United States District Court,
W.D. Pennsylvania.

Jan. 26, 2007.

Jon Pushinsky, Pittsburgh, PA, for Plaintiff.

Chelsea Dice, Craig H. Alexander, Bruce E. Dice & Associates, Robert J. Grimm, Swartz Campbell, Warner Mariani, Pittsburgh, PA, for Defendants.

### Memorandum Opinion

SCHWAB, District Judge.

### I. *Introduction*

This is a civil rights action. Plaintiff, Sharpvisions. Inc. (hereinafter Sharpvi-

sions)[1], alleges that defendants violated the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, the Equal Protection and Due Process Clauses of the Fourth Amendments, the Civil Rights Act of 1871, and the Equal Protection Clause of Pennsylvania Constitution. Defendants sought to prevent Sharpvisions from using its Plum Borough home as a single-family residence for one individual with disabilities. Plaintiff alleges that said conduct of defendants restricted the ability of a person with disabilities from establishing single-family residence in a home of his or her choosing in Plum Borough. Plaintiff seeks equitable relief in the form of a declaratory judgment and permanent injunctive relief, as well as compensatory damages, attorneys' fees and costs.

Pending before this Court are the parties cross-motions for summary judgment, with responses thereto. After careful consideration, and for the reasons that follow, this Court will GRANT plaintiff's motion for partial summary judgment on liability (doc. no. 14), and DENY defendants' motion for summary judgment (doc. no. 18).

## II. *Factual Background*

The Court has assimilated approximately 55 pages of joint material facts submitted by the parties and has gleaned the following factual background.

Under Pennsylvania's Mental Health and Mental Retardation Act, counties are responsible for providing community-based mental health services to disabled individuals. To that end, counties, including Allegheny County, contract with private entities, such as Sharpvisions, to provide services for individuals with disabilities.

Sharpvisions is a non-profit corporation and a state licensed provider of communi-ty home services, with a staff of 250 employees, which provides habitative and rehabilitative services, including residential services, vocational programming and therapeutic services to persons with disabilities. Sharpvisions, which receives its funding from state and federal sources, currently provides services to over 300 individuals.

Sharpvisions has a residential services component which provides assistance to persons with disabilities. Like the home which is the subject of this litigation, Sharpvisions either rents or purchases residences and makes these residences available to persons with disabilities. In additional to receiving funds from governmental sources, the residents of Sharpvisions homes enter into Room and Board Contracts, through which they are required to make monthly payments. All but one of the Sharpvisions' homes (there are 30 in total) is the residence of either one or two individuals with disabilities.

Sharpvisions hires employees to assist the residents according to their own individual needs and abilities. These employees, who are not residents of the homes and apartments rented or owned by Sharpvisions, provide direct care and perform tasks such as assisting in meal preparation, helping with daily chores, administering medicine, transporting the resident to social activities.

On September 21, 2004, Sharpvisions rented a one-story three bedroom home at 702 Blue Ridge Road, Plum Borough, Pennsylvania (the "subject property" or "the Blue Ridge Road property") for use as a residence for a person with disabilities. After Sharpvisions obtained a residential lease, a 17–year old man with mental and physical disabilities ("John Doe")

---

1. For ease of reading, the Court will occasionally refer to the individual living at the Sharpvisions property as plaintiff. However, that individual (referred to as John Doe or John Doe II), is not a named party in this action.

moved into said property. On May 24, 2005, Sharpvisions purchased the property, and John Doe remained as the only resident of the property. However, Sharpvisions employees were also at the home with John Doe on a continuous (24 hour per day) basis. There were typically two and sometimes three employees scheduled to work at the home on a shift basis whenever John Doe was at the residence.

The Blue Ridge Road property is zoned R–2 property. The permitted uses of properties zoned R–2 are specified in Plum Borough's Unified Development Ordinance (the "Ordinance"). According to the Ordinance, "Single Family Dwelling" is listed as a permitted use as of right; and "Group Home" is listed as a permitted conditional use.

For purposes of an R–2 Single Family Dwelling, the Ordinance defines the term "Family" as follows:

Either an individual, or two or more persons related by blood or marriage or adoption, or a group of not more than five persons not so related occupying a premises and living as a single housekeeping unit as distinguished from a group occupying boarding house, lodging house, club, fraternity, or hotel. Household servants employed exclusively on the premises shall be considered part of the family of their employer.

Whereas the Ordinance only allows 1–5 unrelated people to live as family, it does not place any ceiling on the number of biologically related persons who may live together as a family in a home zoned R–2.

The Ordinance defines the term "Group Home" as: "[a] dwelling facility operated for not more than ten persons plus staff, living together as a single housekeeping unit." ·

Properties that satisfy certain minimum dimension and side-yard setback criteria are eligible to obtain the conditional use approval necessary for a group home.

Properties that do not satisfy the minimum dimension and side-yard setback criteria may still operate in the Borough if they obtain a variance. Group homes in the Borough may not be located within 1,500 feet of each other unless they obtain a variance. The Borough does not apply any similar distance requirements to either biologically related families, or non-biologically related living units that are defined as "families" by the Ordinance.

The Borough imposes certain application requirements on those seeking to use residential property as group homes that are not imposed on those seeking to use the property as residences for either biologically related families or non-biologically related living units that are defined as "families" under the Ordinance. These additional requirements include payment of an application fee, the filing of an application, the appearance a public hearing, and the submission of surveys by an architect or engineer. However, biologically related family must obtain an occupancy permit to use a home as a single family residence.

On June 27, 2005, defendant Greg Bachy, a zoning officer for the Borough, sent Sharpvisions a letter stating that it was violating the Ordinance by operating a group home in a single family residential neighborhood without first obtaining conditional use approval from Plum Borough Planning Commission and Zoning Hearing Board. The letter stated that Sharpvisions would have to pay a $500.00 application fee, apply for conditional use approval, and comply with all requirements for group homes. Defendant Bachy also informed Sharpvisions that it would be prosecuted and face fines of up to $500.00 per day unless it either ceased operating a group home or applied for conditional use approval.

Although the Ordinance does not require a group home to provide employees

with off-street parking in order to obtain conditional use approval, the June 27, 2005 letter also required Sharpvisions to submit 13 sets of a property survey showing the location of off-street parking for employees as part of the conditional use approval process. Defendants do not require surveys from biologically related families showing the location of off-street parking, regardless of the number of cars owned by family members.

Defendant Bachy sent another letter to Sharpvisions on July 19, 2005, and the text of that letter was the same as the June 27, 2005 letter. On July 27, 2005, Ruth Siegfried, the CEO of Sharpvisions, responded to defendant Bachy's letter. That letter stated, in relevant part:

> SharpVisions, Inc. did purchase the property ... for use as a private residence. There is no intention to use, nor existing use of the property as a "group home" and therefore no need for meeting criteria not applied to other single family residences within the same zoning district.

On August 5, 2005, defendant Bachy replied to Ms. Siegfried's letter and stated that he remained of the "opinion that his facility is being used as a group home, regardless of the fact that only one individual resides there. . . ." The August 5, 2005 letter conformed to and was intended to serve as an enforcement notice under Pennsylvania law.

On August 22, 2005, defendant Bachy, acting on behalf of the Borough, filed a private criminal complaint against Sharpvisions, which stated that, "the defendant operated and continues to operate a group home in a residential neighborhood for the care of one (1) individual with mental retardation without obtaining the necessary conditional use approval from the Plum Borough Planning commission and Council."

On September 17, 2005 (after the enforcement notice and private criminal complaint were issued) the Plum Borough Police were dispatched to investigate the subject property when John Doe bit a nine year old girl who had knocked on the door.

After the incident, Sharpvisions agreed to a safety plan resulting from a legal proceeding before a judge that required it to place a "no trespassing sign" on the subject property. On October 18, 2005, John Doe moved out of the subject property, and in August, 2006, a new individual with disabilities moved into the home (John Doe II).

On November 3, 2005, the private criminal complaint against Sharpvisions proceeded to trial and the District Judge found Sharpvisions guilty of using the property in violation of the zoning ordinance, and imposed a fine and costs of $549.00. Sharpvisions appealed this decision to the Court of Common Pleas of Allegheny County and, on December 20, 2006, the Court dismissed Sharpvisions appeal. Sharpvisions then filed a motion for reconsideration, which was denied. Sharpvision filed a notice of appeal of this decision, on January 16, 2007, with the Commonwealth Court and that appeal is currently pending.

In addition to defending itself against the private criminal charges in the state judicial system, on December 1, 2005, Sharpvisions also appealed the enforcement notice to the Borough Zoning Hearing Board. After conducting two days of hearings on December 20, 2005, and April 18, 2006, in connection with the appeal at which numerous neighbors and other residents of the Borough spoke at the hearing regarding whether the home was a "group home" or "family residence," the Zoning Hearing Board voted 3–2 to reject Sharpvisions appeal.

In a written decision, dated April 20, 2006, the Zoning Hearing Board stated that "the individuals located at the residence do not qualify as a 'Family' under the Plum Ordinance because there is one individual residing at the residence who was placed there by the Applicant agency property owner and the resident is supervised at all times by staff counselors." The decision further stated that, "the persons who provide assistance to the resident and who are employed by the Applicant are not servants as defined under the term 'Family' in the Plum Ordinance because of the transient nature of the employees and because they are the employees of the applicant and not the resident." The decision also stated that, "the persons who provided assistance to the resident and who are employed by the Applicant are not servants as defined under the term 'Family' in the Plum Ordinance because they are not employed exclusively at the property in question by the resident."

Sharpvisions did not appeal the April 18, 2006 decision of the Zoning Hearing Board to the Court of Common Pleas, nor did it apply for conditional use approval to operate a group home as a single family residence. Instead, Sharpvisions filed the instant suit alleging numerous civil rights violations.

### III. *Standard of Review*

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir.2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ...

through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir.2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has carried this burden, the burden shifts to the nonmoving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir.1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewel-*

ers, *Div. Of Sterling, Inc.,* 142 F.3d 639, 643 n. 3 (3d Cir.1998), *quoting Fuentes v. Perskie,* 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Marino v. Industrial Crating Co.,* 358 F.3d 241, 247 (3d Cir.2004.) *See also Doe v. County of Centre, PA,* 242 F.3d 437, 446 (3d Cir.2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party).

## IV. *Discussion*

### A. *Basis for Federal Jurisdiction*

In 1988, Congress amended the Fair Housing Act to extend protection from housing discrimination to persons with disabilities.[2] This expansion has been recognized by Courts as "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Dr. Gertrude Barber Center, Inc. v. Peters Township,* 273 F.Supp.2d 643, 650 (W.D.Pa.2003) *quoting Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1105 (3d Cir.1996).

Under the FHA, it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of handicap

of ... a person residing in or intending to reside in the dwelling.... 42 U.S.C. § 3604(f)(1)(B).

■ The FHA gives any person who has been injured by a discriminatory practice or who believes that a person will be injured by an imminent discriminatory housing practice standing to seek its enforcement. 42 U.S.C. § 3602(i). Thus, agencies, such as Sharpvisions, that provide residential services to persons with disabilities, have standing to challenge municipal attempts to preclude them from pursuing their missions. *Regional Economic Community Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 46 (2d Cir.2002), *citing Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

### B. *Ripeness*

■ Defendants base their motion for summary judgment, in large part, on the argument that because plaintiff filed no appeal from the decision of the Zoning and Hearing Board, this action is not ripe for judicial review. Plaintiff counters that the claims were ripe as soon as defendant Bachy sent his letter of June 27, 2005, informing plaintiff that it was in violation of the local Ordinance by not applying for a conditional use approval because of its "group home" status. Plaintiff further argues that it underwent two days of hearings before the Zoning and Hearing Board, only to be told that the property constituted a "group home" and therefore, conditional use approval was required.

---

**2.** Plaintiff also moves for summary judgment on its claims under the ADA, the Rehabilitation Act, and the Equal Protection Clause under the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983. Because all of these laws provide bases for challenging disability-based housing discrimination, the

legal analysis under the FHA is therefore equally applicable to plaintiff's other claims. Therefore, the Court will confine its analysis to the law that has developed under the FHA. *See Barber Center v. Peters Township,* 273 F.Supp.2d 643 (W.D.Pa.2003)

■ Under Article III, the test for whether a case presents a live case or controversy and thus is ripe for judicial decision is two-fold. The Court must (1) evaluate the fitness of issues for judicial decision; and (2) evaluate the hardship to the parties in withholding court consideration. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The crux of plaintiff's case appears to hinge on a challenge to the imposition of conditional use approval as discriminatory under the FHA, in and of itself. If this Court were to require some additional form of state exhaustion (i.e. the seeking of conditional use approval or the seeking of a variance), plaintiff would be without a remedy for testing the necessity or validity of submitting to the additional steps of obtaining conditional use approval for those with disabilities.

The Court in *ReMed Recovery Care Centers v. Township of Worcester,* 1998 WL 437272 (E.D.Pa.1998), *citing Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), a case which is factually analogous to the present case, specifically stated the following:

> Exhaustion of state remedies is not required to state a federal cause of action under the FHA. The FHA permits an 'aggrieved person' to commence a federal civil action whether or not a state complaint has been filed or state remedies have been exhausted.

The Court in *ReMed* found an injury in fact from the zoning board's issuance of a cease and desist letter and significantly, stated that "the controversy would be ripe even if plaintiff had not applied to the Zoning Board for a variance or special exception." *Id.* at *6, *citing Assisted Living Associates of Moorestown v. Moorestown Township,* 996 F.Supp. 409 (D.N.J. March 19, 1998). The Court further stat-

ed that "when evaluating fitness for judicial decision, the 'litigants are not required to make futile gestures to establish ripeness.'" *Id. quoting Assisted Living Associates.* Here, much like the situation in *ReMed,* plaintiffs have attempted to remedy the situation to no avail. (Contrast *Marriott Senior Living Services, Inc. v. Springfield Township,* 78 F.Supp.2d 376 (E.D.Pa.1999) where Court held case was not ripe for review where the local authority was not provided a reasonable opportunity to review plaintiff's proposal, to seek input of the public and to state the reasons for its decision).

This Court holds that plaintiff has a ripe cause of action under the FHA and there is no requirement to pursue other remedies before bringing a federal court action, because to require plaintiff to return to state court to file a request for conditional use approval or a variance would effectively leave plaintiff without a vehicle for testing the necessity of the conditional use approval process and whether that restriction constitutes a violation of the FHA. Because the issues before this Court are fit for judicial decision and the parties would undergo a great hardship were this Court to withhold consideration at this time, this Court finds that this case presents a live case or controversy under Article III and thus is ripe for judicial review.

### C. *Legal Theories under the FHA*

■ A plaintiff may bring a claim under the FHA for unlawful discriminatory housing practices under three legal theories: disparate treatment, disparate impact and failure to reasonably accommodate. *Lapid–Laurel v. Zoning Board of Adjustment of the Township of Scotch Plains,* 284 F.3d 442, 448 (3d Cir.2002).

Plaintiff moves for summary judgment on the basis that it has been subjected to disability-based disparate treatment, that

defendants' Ordinance and conduct have a discriminatory disparate impact on persons with disabilities, and that defendants' have failed to reasonably accommodate Sharpvisions' provision of community-based residential programming to individuals with disabilities. In addition to defendants' primary argument that plaintiff's claims are not ripe for judicial review (addressed hereinabove) defendants also move for summary judgment on the basis that the Ordinance is not facially discriminatory.

### 1. *Disparate Treatment*

■■■ Plaintiff contends that the undisputed facts show that it has been subjected to disability based disparate treatment as a matter of law. Disparate treatment, under the FHA, may be shown by "demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others." *ARC of New Jersey,* 950 F.Supp. 637, 643 (D.N.J.1996). Plaintiff need not show that defendants acted with malice or discriminatory animus. Rather, plaintiff must only show that a "protected characteristic played a role in the defendant's decision to treat [it] differently." *Community Services, Inc. v. Wind Gap Municipal Authority,* 421 F.3d 170, 177 (3d Cir.2005).

■■■ After plaintiff establishes that a statute or ordinance is facially discriminatory, the burden then shifts to the defendant to justify the disparate treatment. *ARC,* 950 F.Supp. at 643. If the defendant is able to demonstrate that no less restrictive course of action could be adopted, the burden then shifts back to plaintiff to show that other action could be taken. However, if plaintiff's prima facie case is not rebutted, a violation of the FHA has been proven. *Id.*

Sharpvisions argues that defendants' refusal to give the subject property "family" status, even though it satisfied all the elements of the definition of "family" in the Ordinance, and defendants' use of the presence of paid staff as a rationale for not recognizing Sharpvisions as a "family," is a classic case of disparate treatment.

The Ordinance defines "family" use as: Either an individual, or two or more persons related by blood or marriage or adoption, or a group of not more than five persons not so related occupying a premises and living as a single housekeeping unit as distinguished from a group occupying a boarding house, lodging house, club, fraternity, or hotel. Household servants employed exclusively on the premises shall be considered part of the family of their employer. Doc. No. 17, Appx. 246a.

The Ordinance defines a "group home" use as: "[a] dwelling facility operated for not more than ten persons plus staff, living together as a single housekeeping unit." Doc. No. 17, Appx. 247a.

There is no dispute that there has been only one resident on the subject property and that the home is operated as a single household unit. Likewise, there is no dispute that the group living arrangements excluded from the definition of "family," such as boarding house, club or fraternity, are not applicable to plaintiff's use of its property.

Defendants' stated reasons for not recognizing plaintiff's property as a "family" use appears to center around the presence of staff. However, the presence of staff coupled with the classification of a more restrictive "group home" status, have been held to be unlawful disparate treatment.

In *Barber Center,* a case which was decided in this district by the Honorable Maurice Cohill which this Court finds to be particularly compelling, the Court spe-

cifically held that an ordinance which limits the number of unrelated persons living together is facially discriminatory. 273 F.Supp.2d. at 655–657.[3] Likewise, in *Horizon House Dev. Serv., Inc. v. Township of Upper Southampton*, 804 F.Supp. 683 (E.D.Pa.1992), the Court found an ordinance facially discriminatory where it singles out those persons unable to live independently. In accord with the well-reasoned decisions in *Barber Center* and *Horizon House*, this Court also finds that the Ordinance in this case is facially discriminatory.

To the extent defendants' attempt to place plaintiff into the "group home" category, that label falls under the category of a classic "proxy" disparate treatment case.[4] In *Children's Alliance v. City of Bellevue*, 950 F.Supp. 1491 (W.D.Wash. 1997), a case which was cited by the Court of Appeals for the Third Circuit in *Wind Gap*, the Court held that the act of distinguishing "families" from group facilities based on the presence of a "staff" was a proxy for a classification based on the presence of individuals with handicaps. In the present case, defendants' attempt to distinguish plaintiff (John Doe) from family status because there are staff members who assist this disabled resident with activities of daily living likewise constitutes a proxy for disparate treatment.

While defendants admit that up to five unrelated non-disabled people living together as a single-household unit are treated as a "family," even one person with disabilities, if he or she has assistance, is considered a "group home" and therefore, must follow the conditional use procedures (including distance requirements and other requirements imposed on "group homes").

The Court in *Barber Center* specifically stated that requiring group home residents to obtain counsel, seek special leave, and participate in a formal hearing in order to live in that borough, constituted a difference in treatment between members of families of related persons with more than four members and families of unrelated persons with four members and as such, it falls under the anti-discrimination provisions of the FHA. 273 F.Supp.2d at 656–657.

In this case, the Court similarly concludes that by requiring a person with disabilities seeking to live in the home of his or her choice in Plum Borough to seek special conditional use permits, to attend hearings, and to hire counsel, also falls under the anti-discrimination provisions of

---

**3.** In *Barber Center*, Judge Cohill held that Peters Township had discriminated against the Barber Center by imposing additional burden on homes for those with disabilities. The crux of Judge Cohill's decision of FHA violations was that Peters Township could not impose burdens on agency operated homes for person with disabilities that were not applicable to families. While defendants' attempt to distinguish *Barber Center* on the basis that the agency had applied for a special exception, whereas here, Sharpvisions did not, that argument is unconvincing. In *Barber Center*, the agency applied for an exception mainly because it was ordered to do so by the state court when the Court dissolved an injunction prohibiting it from housing individuals with disabilities in a single-family home. If anything, there was a greater rea-

son for the agency to apply for a special exception because Peter's Township's definition of "family" allowed no more than three unrelated person and the Barber Center home had four resident with disabilities. In the case sub judice, Plum Borough actually allows up to five unrelated people to constitute a "family" use, while Sharpvisions' home only houses one resident.

**4.** Under the "proxy" theory, Courts have recognized that a regulation cannot "use a technically neutral classification as a proxy to evade the prohibiting of intentional discrimination," such as classifications based on gray hair (as a proxy for age) or service dogs (as a proxy for handicapped individuals). *Wind Gap*, 421 F.3d 170, 177, *quoting Mc Wright v. Alexander*, 982 F.2d 222, 228 (7th Cir.1992).

the FHA. Defendants have imposed burdens on the creation of single-family homes for persons with disabilities that are not applicable to the non-disabled, and they have not justified this disparate treatment. Therefore, this Court find that plaintiff has established its claim of discrimination based upon disparate treatment.[5]

## 2. *Disparate Impact*

■ Plaintiff next contends that the undisputed facts show that defendants' Ordinance and conduct have a discriminatory disparate impact on persons with disabilities. In order to prevail on its disparate impact claim, plaintiff must demonstrate that the defendants' policies have a greater adverse impact on persons with disabilities than on non-protected persons, regardless of intent. *Marriott Senior Living Services, Inc. v. Springfield Township*, 78 F.Supp.2d 376, 389 (E.D.Pa.1999).

■ Disparate impact claims under the FHA are reviewed under the framework established for disparate treatment cases under Title VII. *Lapid–Laurel*, 284 F.3d at 466. First, a plaintiff must prove that defendants' policies have a greater adverse impact on persons with disabilities than on non-protected persons. If plaintiff demonstrates a prima facie case, then the burden shifts to the defendants to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available. *Barber Center*, 273 F.Supp.2d at 655, *citing Lapid–Laurel*, 284 F.3d at 466–467.

■ To demonstrate a violation of the FHA based upon a disparate impact theory, plaintiff may show an occurrence of outwardly neutral practices which have a significantly adverse or disproportionate impact on persons with disabilities. *Id.* at 655, citing *Lapid–Laurel*, 284 F.3d at 467. Once plaintiff meets its evidentiary burden, the burden shifts back to defendants to show that they have a legitimate non-discriminatory reason for their action and that no less discriminatory alternatives are available. *Id.*

Again, the Ordinance defines "family" use as:

> Either an individual, or two or more persons related by blood or marriage or adoption, or a group of not more than give persons not so related occupying a premises and living as a single housekeeping unit as distinguished from a group occupying a boarding house, lodging house, club, fraternity, or hotel. Household servants employed exclusively on the premises shall be considered part of the family of their employer.

Doc. No. 17, Appx. 246a.

Plaintiff has shown that while non-disabled persons would be able to enjoy a variety of living arrangements in Plum Borough, a single disabled person could not. Defendants' policies have created restrictions on the establishment of homes for individuals with disabilities in single-family neighborhoods and the burdens placed on those persons with disabilities (having to apply for conditional use permits, attend meetings and hire attorneys)

---

**5.** Plaintiff's claim is also supported by controlling state court case law. In *Human Services Consultants, Inc. v. Zoning Hearing Board of Butler Township*, 137 Pa.Cmwlth. 594, 587 A.2d 40 (1991), the Commonwealth Court was presented with the question of whether an agency operated home for three persons with mental handicaps and staff was a "family" or an "institutional home." The Court ruled for the agency and stated that it was "convinced that the three residents and their staff constitute a 'family' as defined in the ordinance," and noted that the definition of "family" did not include "institutional homes" in its list of excluded group living arrangement. *Id.* at 597–598, 587 A.2d 40. Similarly, in this case, the definition of "family" does not exclude "group homes."

and those policies undoubtedly have a disparate impact on individuals with disabilities. Defendants have failed to put forth any evidence to justify the burdens placed upon plaintiff in this case.

The Court in *Barber Center* held that the definition of "family", which restricted the "family" to not more than three unrelated people, had a disparate impact on the disabled because it limited and even curtailed the possible living arrangements of allowing four unrelated persons with mental retardation to live together as a single household as of right. Likewise, by seeking to restrict one disabled resident from the definition of "family," the Plum Borough Ordinance similarly limits plaintiff's (John Doe's) endeavor to live individually in the home of his own choosing and the Ordinance has a disparate impact on individuals with disabilities.

### 3. *Reasonable Accommodations*

Finally, plaintiff claims that defendants have failed to reasonably accommodate its provision of community based residential programming to persons with disabilities. Under the FHA, the purpose of reasonable accommodations is to facilitate the integration of persons with disabilities into all communities. *Community Services, Inc. v. Heidelberg Township*, 439 F.Supp.2d 380, 398 (M.D.Pa. 2006). Much like the disparate treatment and disparate impact theories, FHA reasonable accommodations claims are also analyzed under a burden-shifting analysis. *Lapid–Laurel, L.L.C.*, 284 F.3d at 457. Plaintiff must show that "the requested accommodation was necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." *Id.*

To establish that the requested accommodation was necessary, plaintiff must establish that "but for the accommodation they will likely be denied an equal opportunity to enjoy the housing of their choice." *Id.* at 460.

Here, in its appeal to the Zoning Board from the enforcement notice, plaintiff requested an accommodation that the Board afford it "family" status. Plaintiff argues, and this Court agrees, that the accommodation was necessary in order to allow its resident to have the same or equal opportunities given to individuals without disabilities—to enjoy the housing of his or her choice.

Defendant has put forth no evidence to show that the requested accommodation was unreasonable because: (1) it imposed an undue financial and administrative burden on the Borough; (2) it imposed undue hardship on the Borough; or (3) it required a fundamental alteration in the nature of the Township's zoning scheme.

Because defendants have failed to meet their burden to set forth any evidence that the requested accommodation was not reasonable, this Court therefore concludes that defendants have violated their legal duty to reasonably accommodate the right of Sharpvisions to operate a family home with one individual with mental retardation in the single-family home of his or her choice—which is Blue Ridge Road in Plum Borough.

### V. *Conclusion*

This Court concludes that defendants have violated both the spirit and intent of the Fair Housing Act by limiting the definition of "family" in the Plum Borough Ordinance to exclude one mentally handicapped individual from living in a single family home of his or her choice, while permitting up to five unmarried individuals to live in a single family home without any restrictions. Congress created the Fair Housing Act to eradicate exactly the type of discrimination that has taken place in

this case. Plum Borough cannot exclude a person with disabilities, inadvertent or otherwise, from the residential homes of Plum Borough or from the mainstream American culture. To do otherwise would thwart the purpose of the Fair Housing Act—to eradicate housing discrimination against persons with disabilities. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).[6]

For the reasons set forth hereinabove, plaintiff's motion for partial summary judgment as to all claims will be granted (doc. no. 14), defendants' motion for summary judgment will be denied (doc. no. 18), and judgment on liability will be entered in favor of plaintiff. An appropriate order follows.

6. This Court also concludes that plaintiff has proven his claims under the ADA, the Rehabilitation Act, the Civil Rights Act of 1871, and the Equal Protection Clauses of the United States and Pennsylvania Constitutions.